Ralph A. LLEWELLYN and Glen Williams, as taxpayers of Clay Community Schools and parents of school children in Clay Community Schools, Intervenors-Appellants,

v.

James R. BEASLEY, John R. Bradshaw and Forrest Buell, Plaintiffs and Counterdefendants-Appellees,

v.

Ralph A. LLEWELLYN, Glen Williams, Gerald Thomas, Clay Community Schools, and Clay Community Schools Building Corp., Defendants and Counterclaimants-Appellees,

v.

David ROSENFELD, Robert Wolfe and Eric Frey d/b/a Rosenfeld, Wolfe and Frey, Cross-defendants-Appellees.

No. 1–1079A278.

Court of Appeals of Indiana, First District.

Feb. 9, 1981.

Rehearing Denied March 24, 1981.

David D. Haynes, Brames, Bopp & Haynes, Terre Haute, for intervenors-appellants.

Jane Woodward Miller, Miller & Miller, South Bend, for Clay Community School Building Corp.

James O. McDonald, Everett, Everett & McDonald, Terre Haute, for Clay Community Schools.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Ralph A. Llewellyn and Glen L. Williams as residents, taxpayers, and patrons of the Clay Community School District, formerly members of the Board of Trustees of the Clay Community Schools, appeal the Parke Circuit Court's denial of their Motion to Intervene pursuant to Ind.Rules of Procedure, Trial Rule 24. We affirm.

## FACTS

The facts in this case involve a complex concatenation of legal events revolving around a building program embarked upon by the Clay Community Schools in 1977. Llewellyn and Williams had been members of the Board of Trustees of the Clay Community Schools on June 3, 1977, when the Board entered into a lease construction agreement with the Clay Community Schools Building Corporation and certain financial arrangements attendant thereto. Llewellyn and Williams were also members of the Board in July 1977 when the Board voted to change the date of the election of school board members from May to November and the terms of board members to run from January 1 to December 31 rather than from July 1 to June 30. This action by the Board extended by six months the terms of Llewellyn, Williams, and Thomas, a third Board member not a party to the Motion to Intervene. James Beasley, John Bradshaw, and Forrest Buell, contending they were the duly elected members of the Board of Trustees on May 2, 1978, filed an action in *quo warranto* and a complaint for injunctive relief seeking, *inter alia*, to oust Llewellyn, Williams, and Thomas and to have themselves declared Board members. In their second amended complaint these plaintiffs also sought to prevent implementation of the lease construction contract by the Clay Community Schools and added the Clay Community School Building Corporation as a defendant. The Building Corporation counterclaimed for damages under its contract with the Schools asserting that the validity of the lease construction agreement had been upheld by the United States Supreme Court when it denied *certiorari* in the taxpayer suit, *Arthur v. Clay Community Schools,* (1978) 439 U.S. 806, 99 S.Ct. 62, 58 L.Ed.2d 98, *reh. den.* 439 U.S. 998, 99 S.Ct. 602, 58 L.Ed.2d 672. This case affirmed the requirement of posting bond in taxpayer public action suits. Clay Community Schools also counterclaimed against plaintiffs Beasley, Bradshaw, and Buell, as well as the partners of the law firm of Rosenfeld, Wolfe, and Frey, who were involved in at least four lawsuits against the

School over the issue of the building program. The Schools contended that the counterdefendants and defendants had engaged in abuse of process by conducting frivolous litigation solely for the purpose of thwarting implementation of the construction project and that they had also interfered with the contractual agreement between the Schools and the Building Corporation. The Building Corporation also cross-claimed against the Schools for a Declaratory Judgment to aid in the implementation of the lease construction contract. Early in February 1979 counterdefendants Beasley, Bradshaw, and Buell and defendants Rosenfeld, Wolfe, and Frey jointly moved the court to dismiss the amended counterclaim of the Schools against them. Said movants were at that point members of the School Board and its counsel, respectively. Having received a letter to the effect that financial commitments for the construction program could not be continued beyond March 1, 1979, the Building Corporation moved for an emergency hearing on its cross-claim for a Declaratory Judgment against the Schools. Said hearings were held on February 26 and 28, 1979. On March 5, 1979, a stipulation was signed by the Building Corporation, but not by the Schools, and approved by the court, to the effect that the lease construction agreement and financial commitments attendant thereto were valid and binding. On the same day the court also signed an order which went beyond the stipulations of the parties and declared that if the revised bids and lease payments exceeded the original estimates and purchase price the obligations of the lease agreement and appurtenant financing agreements were null and void. Several counts of the original and subsequent amended complaints having been dismissed, the court upon the plaintiff's motion for summary judgment ruled that the Board of Trustees' action in extending the terms of office of the three members to be invalid but that Llewellyn, Williams, and Thomas were de facto members of the Board and that the actions taken by the Board during this time were also "de fac-

to." On March 22, 1979, Llewellyn and Williams filed a Motion to Intervene not only in the cross-claim which was adjudicated on March 5, 1979, but also in the counterclaim which the Schools had filed on December 29, 1978. A hearing on intervenors' petition was set for April 12, 1979. On April 10, 1979, the Building Corporation filed a Notice of Dismissal of its counterclaim against Beasley, Bradshaw, and Buell. The court denied intervenors' petition on May 7, 1979, in the following judgment entry: "Comes now the court and overrules defendants', Ralph A. Llewellyn and Glen L. Williams, motion to intervene." Intervenors tendered a motion to correct errors which the court overruled on July 23, 1979. Appeal was perfected from the overruling of the motion to correct errors.

### ISSUE

Did the trial court err in refusing to grant appellants' Motion to Intervene under Ind. Rules of Procedure, Trial Rule 24?

### DISCUSSION AND DECISION

The matter of intervention is controlled by T.R. 24:

"(A) Intervention of right. Upon timely motion anyone shall be permitted to intervene in an action

(1) when a statute confers an unconditional right to intervene; or

(2) when the applicant claims an interest relating to a property, fund or transaction, which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest in the property, fund or transaction, unless the applicant's interest is adequately represented by existing parties.

"(B) Permissive intervention. Upon timely filing of his motion anyone may be permitted to intervene in an action

(1) when a statute confers a conditional right to intervene; or

(2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive administrative order, the governmental unit upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

"(C) Procedure. A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and set forth or include by reference the claim, defense or matter for which intervention is sought. Intervention after trial or after judgment for purposes of a motion under Rules 50, 59, or 60, or an appeal may be allowed upon motion. The court's determination upon a motion to intervene may be challenged only by appeal from the final judgment or order in the cause." [1]

Appellants contend that they are entitled to intervene in the subject actions as of right under T.R. 24(A)(2). Appellants do not raise the question of permissive intervention under T.R. 24(B) in their initial brief, although they reply to appellees' arguments on this point. Appellants seem to concede, therefore, that in the absence of a right to intervene under T.R. 24(A)(2), the refusal of the trial court to permit intervention under T.R. 24(B) was not error. The question in this appeal is limited to the issue of intervention as of right pursuant to T.R. 24(A)(2).

It has been posited that the distinguishing feature between the two types of intervention under T.R. 24 is that while an application for permissive intervention is directed to the discretion of the court, an application for intervention as of right seems to pose only a question of law. 7A Wright &

---

1. We note that the revision of this rule effective January 1, 1981 is not material to this case.

Miller, Federal Practice and Procedure § 1902 (1972). Upon scrutiny of the cases dealing with T.R. 24, however, such an analysis appears to be an oversimplification. Determinations under T.R. 24(A)(2) must be classed as a mixed question of law and fact.

Indiana cases interpreting T.R. 24(A)(2) have adopted the threefold test followed by Federal Courts in interpretation of its double, Rule 24(a)(2) of the Federal Rules of Civil Procedure as amended in 1966. As a matter of law, this test requires that intervenors show (1) an interest in the subject of the action, (2) disposition of the action may as a practical matter impede protection of that interest, and (3) representation of the interest by existing parties is inadequate. *Hinds v. McNair*, (1972) 153 Ind.App. 473, 287 N.E.2d 767; *E. N. Maisel & Associates v. Canden Corp.*, (1980) Ind. App. 398 N.E.2d 1366, *trans. den.; Lawyers Title Insurance Corp. v. C & S Lathing & Plastering Co.*, (1980) Ind.App., 403 N.E.2d 1156. A fourth element which a court must consider as a matter of law in deciding whether or not to grant a motion to intervene, be it under T.R. 24(A) or (B), is the timeliness of the request. *NAACP v. New York*, (1973) 413 U.S. 345, 93 S.Ct. 2591, 37 L.Ed.2d 648. *See also, Bryant v. Lake County Trust Co.*, (1975) 166 Ind.App. 92, 334 N.E.2d 730; 2 W. Harvey, Indiana Practice § 24 (1970).

Aside from agreeing upon the tests which must be met to permit intervention as of right, courts reflect little agreement about precisely what facts or circumstances are necessary to satisfy these tests. Thus, the factual situation which will satisfy the tests of T.R. 24(A)(2) is largely committed to the discretion of the trial court. Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators*, 81 Harv. L.Rev. 721 (1968); 7A Wright & Miller, Federal Practice and Procedure § 1913 (1972). We note that specific findings of fact were not requested in this case pursuant to Ind.Rules of Procedure, Trial Rule 52. Because this appeal is from a general judgment, our standard of review requires that we affirm if there is any legal theory

upon which the trial court's action can be sustained. *Indiana and Michigan Electric Co. v. Schnuck*, (1973) 260 Ind. 632, 298 N.E.2d 436; *Rees v. Heyser*, (1980) Ind. App., 404 N.E.2d 1183.

Appellants contend that they have a right to intervene in this case because they have satisfied the four tests set out above. They assert a protectable interest as parents and taxpayers in the establishment of well-designed, well-equipped school facilities at the best possible price and in protecting a $1,000,000 expenditure of taxpayers' funds in the currently stymied building project. As authority for their position they cite *Smuck v. Hobson*, (D.C.Cir.1969) 132 U.S.App.D.C. 372, 408 F.2d 175, for the proposition that " '[p]arents unquestionably have a sufficient "interest" in the education of their children to justify the initiation of a lawsuit in appropriate circumstances....' " 408 F.2d at 178. We are asked to conclude, therefore, that standing to bring an action entitles one to intervention as of right. This we may not do. Whether or not one has the requisite interest in a case to establish standing to bring an original action is not synonymous with the requisite interest establishing the right to intervene. Shapiro, *supra*; 59 Am.Jur.2d *Parties* § 140 (1971); *Smuck v. Hobson, supra*. In fact even though one might have the requisite interest to merit intervention as of right, the court could still deny intervention if it determined that resolution of the current action would not impede petitioner's protection of that interest in separate litigation, that petitioner's alleged interest was adequately represented by the current parties, or that the request to intervene was not timely made.

Attempts to define the T.R. 24 concept of "interest" can lead one to despair. It is an inherently flexible term. In his survey of the types of interests which relate to intervention, Professor David L. Shapiro points out that

"the reference in rule 24 and in some statutes to an 'interest' suggests that the test is a simple one, but that notion quickly fades when one struggles with the cases. The range of possible interests

may defy adequate classification, spreading over a spectrum that is extremely hard to chart. Whether a sufficient interest exists to make intervention appropriate calls for considerable and careful judgment, and perhaps a little faith as well, with attention to such factors as the legal and practical availability of other remedies, the contribution that the prospective intervener can make to the litigation, the immediacy and degree of the harm threatened, and the advantages of avoiding multiplicity of actions. Further, the range of possible interests indicates the propriety of regarding interveners as not necessarily possessing all the litigation rights of the original parties to the action."

81 Harv.L.Rev. at 740. Nevertheless, two lines of authority can be discerned among the cases, one giving a broad meaning to the term and the other taking a more constricted view. The first line of cases is based on a very broad reading of the interest requirement and is represented by the United States Supreme Court's interpretation of Federal Rule 24 in *Cascade National Gas Corp. v. El Paso Natural Gas Co.*, (1967) 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814, and by *Smuck v. Hobson, supra*, decided under *Cascade*. In *Cascade* Justice Douglas writing for five members of the Supreme Court held that the state of California, Cascade Natural Gas Corporation, and California Edison, a customer of Pacific Northwest Pipeline Corporation, all were entitled to intervention in a divestiture action where the court found that El Paso Natural Gas Company had violated the Clayton Act in its acquisition of Pacific Northwest Pipeline Corporation. The Court held without explanation that a customer of Pacific was entitled to intervene under Federal Rule 24 because of its interest in seeing that the company created by divestiture was viable and because the government fell short of adequately representing the customer's interests. Other courts quickly followed the

Supreme Court's lead in decisions such as *Nuesse v. Camp*, (D.C.Cir.1967) 128 U.S. App.D.C. 172, 385 F.2d 694, where Judge Leventhal concluded that policy considerations behind the interest requirement should guide interpretation of the term and that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." 385 F.2d at 700. Thus in *Smuck v. Hobson, supra*, a desegregation case, the court again focusing on judicial economy, stated that such goal "may in certain circumstances be met by allowing parents whose only 'interest' is the education of their children to intervene." 408 F.2d at 179. Nevertheless, the *Smuck* court recognized that an entirely open-ended definition of interest might thwart the very policy considerations of judicial economy and just, speedy, and inexpensive resolution of lawsuits that the rules were designed to promote. In the final analysis, therefore, *Smuck* recognized that "[t]he decision whether intervention of right is warranted thus involves an accommodation between two potentially conflicting goals: to achieve judicial economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex or unending." (Footnotes omitted.) 408 F.2d at 179. It was this second policy consideration, *i. e.*, the need to prevent proceedings from becoming fruitlessly complex and unending, which distinguishes the line of authority giving a narrower interpretation to the concept of interest in Federal Rule 24.

In *Donaldson v. United States*, (1971) 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580, the Supreme Court backed away from the broad reading of interest presented in *Cascade*.[2] In this case the Court affirmed the lower courts' denial of a taxpayer's petition to intervene in proceedings to enforce Internal Revenue Service's summonses directed to a former employer and accountant of

---

**2.** Professor Shapiro suggests that the decision in *Cascade* "may be outside the mainstream and that the apparent novelty of the rulings on intervention may have been largely a result of the Court's dissatisfaction with the substantive

provisions of the decree." 81 Harv.L.Rev. at 730. The only other Supreme Court case dealing directly with T.R. 24 is *Trbovich v. United Mine Workers of America*, (1972) 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686. In *Trbovich*,

the taxpayer for production of records of the taxpayer's compensation during years for which the taxpayer's returns were under investigation. Justice Blackmun, in speaking for a unanimous court, analyzed the interest concept of Rule 24(a)(2) as follows:

"The nature of the 'interest' urged by the taxpayer is apparent from the fact that the material in question (once we assume its relevance) would not be subject to suppression if the Government obtained it by other routine means, such as by Acme's independent and voluntary disclosure prior to summons, or by way of identifiable deductions in Acme's own income tax returns, or through Mercurio's appearance as a trial witness, or by subpoena of the records for trial. This interest cannot be the kind contemplated by Rule 24(a)(2) when it speaks in general terms of an interest relating to the property or transaction which is the subject of the action. What is obviously meant there is a significantly protectable interest. And the taxpayer, to the extent that he has such a protectable interest, as, for example, by way of privilege, or to the extent he may claim abuse of process, may always assert that interest or that claim in due course at its proper place in any subsequent trial. Cf. *United States v. Blue*, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966).

"We therefore hold that the taxpayer's interest is not enough and is not of sufficient magnitude for us to conclude that he is to be allowed to intervene. Were

we to hold otherwise, as he would have us do, we would unwarrantly cast doubt upon and stultify the Service's every investigatory move."

400 U.S. at 530, 532, 91 S.Ct. at 542, 543.

■ Although Indiana courts have not had occasion to analyze the interest requirement of T.R. 24(A)(2) in depth, it would appear from the few cases decided under T.R. 24 that they would favor the more analytical approach represented by *Donaldson* to the open-ended approach of *Cascade* or *Smuck*. For example, in *Hinds v. McNair, supra*, Judge Hoffman stated that interpretation of the interest test of T.R. 24 is aided by the language of *Donaldson* set out above and of the case of *Hobson v. Hansen*, (D.D.C.1968) 44 F.R.D. 18, which held that intervention requires a "direct, substantial, legally protectable interest in the proceedings." 153 Ind.App. 473, 287 N.E.2d at 772. (*Hobson v. Hansen* was the case from which the appeal in *Smuck* was taken.) Judge Hoffman also cited with approval in the same opinion the interest test established by the Indiana Supreme Court in *Moorman v. Cox*, (1966) 247 Ind. 647, 220 N.E.2d 525 at 527: "Under this statute,[3] as we interpret it, parties seeking to intervene have the burden of showing that they have an immediate and direct interest in the subject matter of the action." (Citations omitted.) 247 Ind. 650. As recently as last year, Judge Garrard stated that the interest required by current T.R. 24 is the direct and immediate interest in the subject matter of the proceedings required by *Moorman v.*

however, appellee did not contend that appellant's interest was insufficient; thus, the Court did not delve into the issue. The Court held that the petitioner had a limited right to intervene in the litigation brought by the Secretary of Labor under Title IV of the Labor-Management Reporting and Disclosure Act to challenge the election of union officers for violation of the Act. Justice Douglas alone dissented, taking the position that intervention should have been granted for all purposes so as to "centralize in a single proceeding such litigation as might be warranted with respect to a single election." 404 U.S. at 540, 92 S.Ct. at 637.

**3.** The statute to which the court refers is found in Acts 1881 (Spec.Sess.), ch. 38, § 24, p. 240,

§ 2 222 Burns' 1946 Replacement and reads as follows:

"Making new parties—Right to intervene.— The Court may determine any controversy between the parties before it, when it can be done without prejudice to the rights of others or by saving their rights; but when a complete determination of the controversy can not be had without the presence of other parties, the court must cause them to be joined as proper parties. And when, in an action for the recovery of real or personal property, a person not a party to the action, but having an interest in the subject thereof, makes application to the court to be made a party, it may order him to be made a party by the proper amendment."

Cox. *E. N. Maisel and Associates v. Canden Corp.*, (1980) Ind.App., 398 N.E.2d 1366, *trans. den.*[4] Therefore, Indiana seems to require more of an "interest" to merit intervention as of right than the language of the Rule itself might suggest. Such position is not without support in other jurisdictions and has the approval of commentators such as Professors Kaplan and Kennedy. Kaplan, *Continuing Work of the Civil Committee; 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv.L.Rev. 356 (1967); Kennedy, *Let's All Join In: Intervention Under Federal Rule 24*, 57 Ky. L.J. 329 (1969). *See* 7A Wright & Miller, Federal Practice and Procedure § 1907 (1972). *See also, U. S. v. Perry County Board of Education*, (5th Cir. 1978) 567 F.2d 277; *Pate v. Dade County School Board*, (1978) 79 F.R.D. 638 *aff'd* (5th Cir. 1979) 588 F.2d 501, *cert. den., Beckford v. Dade County School Board*, (1979) 444 U.S. 835, 100 S.Ct. 67, 62 L.Ed.2d 44. *City of Antonio v. C. A. B.*, (D.C.Cir.1967) 374 F.2d 326. Professor Kennedy has also stated that "[t]he liberalization of Rule 24(a) was not aimed at revising the nature of the applicant's interest, but was focused mainly on relaxing the requirement that the applicant might be bound under the doctrine of res judicata." Kennedy, *supra* at 346.

Any discussion of intervention would be incomplete without at least a glance in the direction of its historical evolution. This subject has been handled adequately and in great detail elsewhere. *See e. g.*, 7A Wright & Miller, *supra*, § 1901; Cohn, *The New Federal Rules of Civil Procedure*, 54 Geo.L.Rev. 1204, (1966); Shapiro, *supra*, Kaplan, *supra*. Suffice it here to say that intervention is a concept rooted in the civil rather than the common law and, while representing an attempt at streamlining procedural requirements in the interest of efficient resolution of controversies, it also may fly in the face of the common law's traditional respect for the parties' right to be masters of their own suits. We note

therefore in a case such as the one presently before us, and in contrast to *Smuck v. Hobson* relied upon by appellants, that where the original parties to an action oppose petitioner's intervention the court must consider interests other than just those of appellants. The court must attempt to juggle not only its own interests in the economy of litigation with appellants' interests in the proceedings but also with the other parties' interest in controlling its own litigation as well as with the public's interest in general to prompt access to the court's services and calendar. The court's general objective in such cases favors maximizing all interests rather than rejecting any one. Cohn, *supra*.

The facts and circumstances of the current case spread upon the background of policy considerations and historical evolution of T.R. 24 seem, in balance, to call for the more restricted reading of the interest requirement for intervention of right. On the one hand, we have a lengthy and exceedingly complex spate of litigation concerning a school lease construction contract which has proceeded through at least four other lawsuits and in one form reached the United States Supreme Court. In its present form the subject of this lawsuit has spawned three amended complaints, two counterclaims (one of which was amended and at least partially dismissed) and a crossclaim. On the other hand, we have petitioners asserting an interest in the subject matter of this dispute and seeking to intervene to appeal a judgment in order to revive a lease construction contract entered into in 1977 and which, since March 1, 1979, has no financial underpinning. Granting petitioners permission to intervene for the purpose of appealing a judgment which merely states a *fait accompli* and relieves the parties from economic entanglements would be to little avail other than to soothe the feelings of those who consider themselves to have been wronged by the scuttling of their construction plan, to prolong

---

4. Indiana's most recent case on the subject, *U. S. Aircraft Financing, Inc. v. Jankovich*, (1980) Ind.App., 407 N.E.2d 287, *(transfer pending)*, involves a property interest of the type which would qualify one to intervene even under the prior intervention statute.

the conflict, and to preclude the current Board from proceeding with a construction project backed by community support. We find that this interest in the proceedings at hand not to be of sufficient magnitude for us to conclude that appellants are entitled to intervention of right under T.R. 24.

Judgment affirmed.

ROBERTSON and SHIELDS (by designation), JJ., concur.