George F. KRIEG and Thelma Louise Krieg, Appellants (Petitioners for Joinder Below),

v.

David L. GLASSBURN, Appellee (Defendant Below),

and

Linda Kay Glassburn, Nominal Appellee (Plaintiff Below).

In the Matter of the Petition of Carol Marie GLASSBURN to Adopt David Troy Glassburn and Julie Ann Glassburn;

George F. KRIEG and Thelma Louise Krieg, Appellants (Petitioners for Joinder Below),

v.

Carol Marie GLASSBURN, Appellee (Respondent Below).

Nos. 2–180A9, 2–180A8.

Court of Appeals of Indiana, Second District.

May 5, 1981.

Rehearing Denied June 4, 1981.

William C. Menges, Jr., Kokomo, for appellants in both cases.

Eleanor B. Stein, Bayliff, Harrigan, Cord & Maugans, P. C., Kokomo, for appellees David L. Glassburn and Carol Marie Glassburn.

## SULLIVAN, Judge.

Appellants George and Thelma Krieg appeal the denial of their Petitions for Join-der. They contend in No. 2–180–A–9 that grandparents have rights sufficient to give them standing to intervene and join as parties to a custody proceeding supplemental to their daughter's divorce for the purpose of obtaining visitation with their minor grandchildren. In the adoption proceeding, No. 2–180–A–8, the Kriegs contend they should be allowed to intervene because their visitation rights, gained through the divorce action, would be adversely affected if the adoption is finalized. We reverse in part, affirm in part, and remand for further proceedings.

Linda and David Glassburn were married in 1964 and the marriage, which was dissolved in 1970, produced two children. Originally, custody was awarded to the mother, the Kriegs' daughter. In 1972, however, the order was modified to give custody to the father. Shortly thereafter, the court fixed visitation rights for the mother, including the following paragraph:

> "That the maternal grandparents of the children, Mr. and Mrs. George F. Krieg, shall have the right to pick up the children from defendant's home for the benefit of the plaintiff on the above granted visitation days." [1]

On October 30, 1978, Carol Marie Glassburn, David Glassburn's second wife, filed a petition to adopt the children. The petition, consented to by David, alleged as grounds for terminating Linda's parental rights the lack of significant contact with the children for a period of more than one year and abandonment. Linda's whereabouts where unknown when the petition was filed and service was therefore effected by publication.

On December 15, 1978, the Kriegs filed their Petition for Joinder alleging that the court had previously granted them conditional visitation rights and that, due to a material change in circumstances, a grant of regular visitation rights would be in the

1. Appellants maintain that this provision gave them limited visitation rights. Appellee responds that the court merely specified the mode of transportation. We believe that neither characterization is entirely accurate, but we need not consider the matter further because of our determination regarding the primary issue. For the same reason, we need not address the argument made by the Kriegs which is premised upon due process grounds.

children's best interest. In their Petition to Join the adoption proceedings the Kriegs alleged that: 1) granting the adoption would adversely affect their visitation rights; and 2) the proceeding constituted fraud because in a deposition, Carol admitted to a meeting in July 1978 between Linda and the children. The father then filed his Motion to Dismiss the Petition for Joinder in the custody proceeding stating that the Kriegs had no standing because they had no legal entitlement to visitation. A similar argument was made to the Kriegs' petition to join the adoption proceedings. After hearings on the issues, the court denied the Kriegs' petitions concluding that they did not have sufficient legal standing to intervene or join as parties. The adoption proceeding was stayed, however, pending the outcome of this appeal.

I.

### Finality and Appealability

■■■ Before considering the issues, we must determine whether the visitation case is properly before this court. The Kriegs' document was denominated "Petition for Joinder." Joinder pertains to those who may be parties to the action from the outset and those who may be brought into the suit by the original parties. *See* Ind.Rules of Procedure, Trial Rule 20. The character of a pleading or motion is determined by its substance rather than its caption. *McQueen v. State* (1979) Ind., 396 N.E.2d 903, 904. Therefore, the Kriegs' petition will be considered as a combined Motion to Intervene and Petition for Visitation.[2] Trial Rule 24(C) states in pertinent part: "The court's determination upon a motion to intervene may be challenged only by appeal from the final judgment." Under the cir-

cumstances of the visitation case, the trial court's ruling was, as to the Kriegs, a final judgment. There was no underlying action in the usual sense. Normally, intervention is sought in a pending action that will result in a final judgment from which an appeal can be taken. In a dissolution of marriage, however, the trial court's jurisdiction and the cause itself is of a continuing nature throughout the minority of the children, *Inkoff v. Inkoff* (3d Dist. 1974) 159 Ind.App. 239, 241, 306 N.E.2d 132, 133, although after the decree of dissolution another judgment might never be rendered in the cause.

■■ As the Indiana Supreme Court stated in *Richards v. Crown Point Community School Corp.* (1971) 256 Ind. 347, 350, 269 N.E.2d 5, 6–7 (original emphasis):

"An interlocutory order is one made before the final hearing on the merits. It requires something to be done or observed but does not determine the entire controversy.

. . . [I]t is the *character* of an order that determines its classification as final or interlocutory.

. . . .

We need go no further to indicate that it is a *putting to rest* of an issue that renders it appealable as a final order."

Since the trial court's ruling had the effect of determining the entire controversy and clearly put an issue to rest, the denial of the Motion to Intervene in this instance was a final judgment from which an appeal could be taken.

■■ Although the circumstances before us do not fit easily within the language of Trial Rule 24(A)(2),[3] the scope of the rule is sufficiently broad to permit the Kriegs to intervene as of right in the visitation action

---

**2.** Similarly, the Kriegs' Petition for Joinder in the adoption proceeding will be treated as a Motion to Intervene. It is considered here in the interest of judicial economy because of the interrelationship of the two cases.

**3.** T.R. 24(A) provides:
"Intervention of right. Upon timely motion anyone shall be permitted to intervene in an action

. . . .

(2) when the applicant claims an interest relating to a property, fund or transaction, which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impede or impair his ability to protect his interest in the property, fund or transaction, unless the applicant's interest is adequately represented by existing parties."

if grandparents may be entitled to visitation.

## II.

### Visitation

David Glassburn contends that Indiana law extends visitation rights only to parents, citing I.C. 31–1–11.5–24 (Burns Code Ed.1980).[4] In interpreting a very similar statute, the Kentucky Supreme Court stated: "[The statute] does not prohibit the grant of visitation to nonparents .... It merely guarantees that a non-custodial natural parent will not be denied visitation privileges unless it would seriously endanger the child. Uniform Marriage and Divorce Act, Sec. 407, Commissioner's Note (1971)." *Simpson v. Simpson*, (Ky.1979) 586 S.W.2d 33, 35 (construing Ky.Rev.Stat. § 403.320 (Supp.1980)). The same result, that the statute does not necessarily exclude visitation rights of third parties, was reached in *Collins v. Gilbreath* (4th Dist. 1980) Ind.App., 403 N.E.2d 921.

In *Collins*, the three children involved lived with their mother and stepfather from the time of their marriage in August 1975 until the mother's death in September 1977. Thereafter, the court awarded custody to the natural father, but granted visitation rights to the stepfather. In affirming the trial court's judgment, the court stated:

"In so holding we do not intend to diminish the rights of a natural parent concerning his or her minor children. Nor do we intend to open the door and permit the granting of visitation rights to a myriad of unrelated third persons, including grandparents, who happen to feel affection for a child. Our decision is explicitly limited to the type of factual situation presented by this case, i. e., where the party seeking visitation has acted in a custodial, and parental capaci-

ty." 403 N.E.2d at 923–24 (footnote omitted).

The record indicates that the Glassburn children were in the physical custody of the Kriegs for several weeks in 1972. Thus, in the purely technical sense, the instant case is within the purview of *Collins*. We believe, however, that the Kriegs' physical custody was for too brief a period and was too remote in time to have conferred upon them a right to visitation. While we agree with the result in *Collins*, it is our view that a different standard should be formulated.

Most jurisdictions which permit third person visitation do so under statutory authority. *E. g.*, Conn.Gen.Stat.Ann. § 46b–59 (West Supp.1980); Fla.Stat.Ann. § 61.-13(2)(b) (West Supp.1980); Iowa Code Ann. § 598.35 (West Supp.1980); Mo.Ann.Stat. § 452.400 (Vernon Supp.1980); N.Y.Dom. Rel.Law § 240 (McKinney Supp.1980); Wash.Rev.Code Ann. § 26.09.240 (West Supp.1980); Wis.Stat.Ann. § 767.245(4) (West Special Pamphlet 1980). Nevertheless, courts in Kentucky, Illinois, and Pennsylvania, as well as Indiana in *Collins* have permitted third person visitation without specific statutory authority.

In *Simpson v. Simpson, supra*, 586 S.W.2d 33, the case was remanded to the Kentucky trial court for a hearing to determine whether visitation with the stepmother would be in the child's best interest. The stepmother had cared for the child for nearly six years.

In *Chodzko v. Chodzko* (1976) 66 Ill.2d 28, 4 Ill.Dec. 313, 360 N.E.2d 60, the court held that visitation could be granted to grandparents upon a showing of special circumstances justifying such visitation. In that case no special circumstances were alleged.

In *Commonwealth ex rel. Williams v. Miller* (1978) 254 Pa.Super. 227, 385 A.2d 992,

---

4. I.C. 31–1–11.5–24 states:

"Visitation.—(a) A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation by the parent might endanger the child's physical health or significantly impair his emotional development.

(b) The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation might endanger the child's physical health or significantly impair his emotional development."

the maternal grandmother sought visitation. After her parents' divorce, the child lived with her mother and great aunt. She remained with the great aunt when her mother remarried, but her father obtained custody after the mother's death. The great aunt was granted visitation at that time. When the great aunt became too ill to visit the child, the grandmother filed her petition which was denied for various reasons.

The well-reasoned opinion merits extensive quotation.

"[I]n a dispute between a parent and a third party, including a relative such as a grandparent, the parent has a prima facie right to custody, which will be forfeited only if convincing reasons appear that the child's best interest will be served by an award to the third party. Since visitation is correlative to custody a similar test should apply when a third party seeks visitation, although the burden on the third party should not be so heavy, for an order granting visitation is a far lesser intrusion, or assertion of control, than is an award of custody.

We recognize that any attempt to state such a test runs the risk of ending with a statement either too nebulous or too rigid. We must, nevertheless, make the attempt, and therefore offer the following: When seeking visitation, a third party must show reasons to overcome the parent's prima facie right to uninterrupted custody. However, the reasons need not be so convincing as in a custody case. In a custody case, the third party must convince the court that it is in the child's best interest *to take custody* from a parent and award it to the third party. In a visitation case, the third party need only convince the court that it is in the child's best interest *to give some time* to the third party. As the amount of time requested moves the visit further from a visit and closer to custody, the reasons offered in support of the request must become correspondingly more convincing.

This test should not be understood as inviting visitation suits by well-meaning strangers. Almost by definition, a stranger to a child would have an extraordinarily heavy burden of proof to sustain in order to overcome the parent's right to uninterrupted custody. This point might be phrased differently: Except in extraordinary circumstances, the reasons that a stranger can offer are unlikely to be convincing. For example, the ability to provide some luxuries, or some creature comforts, would not be enough, just as it is not enough in custody cases." 385 A.2d at 994 (citations omitted) (original emphasis).

The court rejected the trial court's reasons for denying visitation and stated: "Except under unusual circumstances, no child should be cut off entirely from one side of its family." 385 A.2d at 995.

■ We approve and adopt the standard enunciated in *Commonwealth ex rel. Williams.* Grandparents may be awarded visitation rights by overcoming the parent's prima facie rights with a proper showing that such visitation is in the child's best interest. The burden of proof upon the grandparents will increase as the amount of time sought and the type of visitation become more custodial.

Accordingly, we reverse the judgment of the trial court in No. 2–180–A–9 and with respect to visitation rights remand for further proceedings consistent herewith.

### III.

#### Adoption Proceeding

The Kriegs contend they should be permitted to intervene because of the adverse effect the adoption proceeding will have on their visitation rights. The validity of this argument necessarily depends upon a determination on remand that the Kriegs are entitled to such visitation. "Intervention" in this action, however, even if the Kriegs are granted visitation rights, is precluded by the statutory framework of adoption proceedings.

■ I.C. 31–3–1–6(a) (Burns Code Ed. 1980), sets forth those persons from whom consent must be obtained before the adoption of a minor may be granted:

"(a) Except as otherwise provided in this section, a petition to adopt a child under eighteen [18] years of age may be granted only if written consent to adoption has been executed by:

(1) Each living parent of a child born in wedlock;

(2) The mother of a child born out of wedlock and the father of such a child whose paternity has been established by a court proceeding;

(3) Any person, agency, or county department of public welfare having lawful custody of the child whose adoption is being sought;

(4) The court having jurisdiction of the custody of the child, if the legal guardian or custodian of the person of the child is not empowered to consent to the adoption;

(5) The child to be adopted, if more than fourteen [14] years of age; or

(6) The spouse of the child to be adopted. A parent under the age of eighteen [18] years may consent to an adoption without the concurrence of his parent or parents, or the guardian of his person unless the court, in its discretion, determines that it is in the best interest of the child to be adopted to require such a concurrence."

The exceptions to the consent rule are stated in sub-section *g*:

"(g) Consent to adoption is not required of:

(1) A parent or parents if the child is adjudged to have been abandoned or deserted for six [6] months or more immediately preceding the date of the filing of the petition; or a parent of a child in the custody of another person, if for a period of at least one year he fails without justifiable cause to communicate significantly with the child when able to do so or knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree (when the parent or parents have made only token efforts to support or to communicate with the child, the court may declare the child abandoned by the parent or parents);

(2) The natural father of a child born out of wedlock whose paternity has not been established by a court proceeding;

(3) A parent who has relinquished his right to consent as provided in this section;

(4) A parent after the parent-child relationship has been terminated under IC 31–6–5 [31–6–5–1—31–6–5–6];

(5) A parent judicially declared incompetent or mentally defective if the court dispenses with the parent's consent;

(6) Any legal guardian or lawful custodian of the person to be adopted other than a parent who has failed to respond in writing to a request for consent for a period of sixty [60] days or who, after examination of his written reasons for withholding consent, is found by the court to be unreasonably withholding his consent."

The consent of noncustodial grandparents, even those with visitation rights, is clearly not statutorily required prior to the adoption of a grandchild. Further, it is not within our province to interpose such a requirement. If greater rights are to be accorded noncustodial relatives it is for the legislature, not this court, to do so. *See, e. g.*, Ga.Code Ann. § 74–411 (Supp.1980) (blood relatives may object to adoption if natural parents deceased). The Kriegs cannot, therefore, "intervene" into this phase of the proceeding.

■ Consent, however, is merely the statutory prerequisite to the institution of an adoption proceeding. *Unwed Father v. Unwed Mother* (3d Dist. 1978) Ind.App., 379 N.E.2d 467, 470. After consent has been obtained or an exception deemed applicable, the court must still determine if the adoption is in the child's best interest. I.C. 31–3–1–8 (Burns Code Ed.1980); *see Stout v. Tippecanoe County Department of Public Welfare* (2d Dist. 1979) Ind.App., 395 N.E.2d 444; *Rosell v. Dausman* (3d Dist. 1978) Ind.App., 373 N.E.2d 185, 188. To this end the legislature has required a hearing to precede every final adoption decree. I.C. 31–3–1–3 & –5 (Burns Code Ed.1980).

The Kriegs contend that public policy considerations favor allowing interested parties to submit information at the final hearing whether or not the traditional or statutory standing requirements are met. While this argument has been waived for failure to cite any pertinent authority, Ind. Rules of Procedure, Appellate Rule 8.3(A)(7), we note this informational function is performed in every case[5] by an agency licensed by the State or a county department of public welfare. I.C. 31–3–1–4 & –8 (Burns Code Ed.1980). If we assume, as we must, that the agency will perform its duty with care, public policy will be adequately served without the intrusion of interested but superfluous parties. The Kriegs are essentially witnesses asking us to compel the trial court to hear their evidence. Although we understand their desire to be heard, such severe interference with the trial court's power to control the introduction of evidence is untenable.

The judgment of the trial court in No. 2–180–A–9 is reversed and the cause remanded for further proceedings consistent with parts I. and II. of this opinion. The judgment of the trial court in No. 2–180–A–8 is affirmed.[6]

Reversed in part, affirmed in part, and remanded for further proceedings.

BUCHANAN, C. J., and SHIELDS, J., concur.

---

**5.** Our Supreme Court has determined that the agency report is not admissible over objection in a contested case, i. e., a case in which a party whose consent is required refuses to do so. *Attkinson v. Usrey* (1946) 224 Ind. 155, 65 N.E.2d 489. This holding has no effect on our decision since the Kriegs' consent is not required. Additionally, the Kriegs' evidence of a July 1978 visit by the natural mother does not preclude a finding that she failed to communicate significantly with the children. Significant communication "is not a commodity to be measured in terms of units of visits." *Rosell v. Dausman, supra*, 373 N.E.2d at 188.

**6.** It may be observed that the Kriegs' visitation privileges, if any, would be terminated by a final decree of adoption. Annot., 90 A.L.R.3d 249–50 (1979 & Supp.1980).