The DEVELOPMENTAL DISABILITIES RESIDENTIAL FACILITIES COUNCIL, Appellant (Defendant Below),

v.

The METROPOLITAN DEVELOPMENT COMMISSION OF MARION COUNTY, INDIANA, Appellee (Plaintiff Below).

No. 1–383A64.

Court of Appeals of Indiana, First District.

Nov. 1, 1983.

---

Kenneth J. Falk, William R. Leahy, Legal Services Organization of Indiana, Inc., Indianapolis, for appellant.

City-County Legal Div., John P. Ryan, Corp. Counsel, Mark Dall, Asst. Corp. Counsel, Indianapolis, for appellee.

ROBERTSON, Presiding Judge.

The Indiana Association for Retarded Citizens, Inc. (IARC) appeals the denial of its motion to intervene in the judicial review of an administrative determination made by the Developmental Disabilities Residential Facilities Council (DDRFC). The Metropolitan Development Commission of Marion County (MDC) sought judicial review of the DDRFC's denial of its alternative plan for group housing for the developmentally disabled.[1]

We affirm.

IARC is a not-for-profit corporation concerned with the health, growth, and well being of the retarded and developmentally disabled throughout Indiana. Its membership includes the parents, siblings, and friends of retarded citizens. Some of its members are elderly parents who wish to place their retarded children in a residential environment such as group homes when they are unable to care for their children. The DDRFC is the state organization, created pursuant to IND.CODE § 16–10–2.1–1 *et seq.*, which is vested with the power to determine the need for residential services for the developmentally disabled for each geographic area of the state in conjunction with the department of mental health. The DDRFC is also authorized to develop standards for the licensure of such residential facilities as well as recommending social and rehabilitation programs for the developmentally disabled. *See:* IND.CODE § 16–10–2.1–4. The MDC is the community planning authority which is involved in zoning approval in Marion County.

Although the DDRFC is authorized to determine the needs for the developmentally disabled for all areas of the state, a community planning authority, such as the MDC, may promulgate an alternative plan for establishing group homes. IND.CODE § 16–10–2.1–6.7. This section provides

(a) Section 6.5 [16–10–2.1–6.5] of this chapter does not apply to a planning authority or person planning to establish a residential facility in an area designated for residential use that is under the planning authority's land use control if, before May 1, 1981, that planning authority develops an alternative plan, approved by the council, governing the placement of a residential facility in an area designated for residential use that is under the planning authority's land use control.

(b) The council shall approve an alternative plan submitted by a planning authority, after holding a hearing under IC 4–22–1, if the alternative plan:

(1) Excludes residential facilities from placement in specific areas designated for residential use only if they possess unique qualities that would be adversely affected by the placement of a residential facility in those areas (However, an area does not possess a unique nature solely because it

---

1. IND.CODE § 16–13–1–3(4) includes the following definition of developmental disability:

 (4) The term "developmental disability" means a disability of a person which:

 (A) Is attributable to mental retardation, cerebral palsy, epilepsy, or autism; or is attributable to any other condition found to be closely related to mental retardation because this condition results in similar impairment of general intellectual functioning or adaptive behavior, or requires similar treatment and services; or is attributable to dyslexia resulting from a disability described in this clause;

 (B) Originates before the person is age eighteen [18]; and

 (C) Has continued or is expected to continue indefinitely and constitutes a substantial handicap to the person's ability to function normally in society.

is composed of single family dwellings.); and

(2) Demonstrates that there are sufficient other placement opportunities in other residential areas under the planning authority's land use control to meet the local need for residential facilities.

(c) If the planning authority wants to amend its alternative plan, the amendment does not become effective until it is approved by the council as meeting the standards set out in subsection (b).

The MDC conducted hearings and promulgated an alternative plan. The plan required that a group home seek a special exception grant from the MDC. The grant would be approved upon a determination from the MDC that: (1) the group home would not be injurious to the public health, safety, morals, convenience, or general welfare; (2) the grant will not injure or adversely affect the area including the property values; (3) the group home will be in harmony with the character of the district; (4) the lot which contains the group home is not located within three thousand feet from another group home; and (5) the group home shall contain at least two hundred square feet of habitable floor area for each resident.

The DDRFC rejected the plan and the MDC sought judicial review of the decision.[2] IARC moved to intervene in the judicial review proceeding which was denied. IARC's motion sought intervention as matter of right or in the alternative as permissive intervention. The trial court permitted IARC to participate as an amicus curiae. The trial court reversed the decision of the DDRFC, finding that the legislature did not intend to preempt local zoning authorities from imposing reasonable zoning regulations on group homes and that the MDC's plan contained reasonable regulations. The DDRFC did not file its motion to correct errors within sixty days of the trial court's decision.

Intervention is governed by Ind.Rules of Procedure, Trial Rule 24. This rule in relevant part provides:

(A) Intervention of right. Upon timely motion anyone shall be permitted to intervene in an action:

(1) when a statute confers an unconditional right to intervene; or

(2) when the applicant claims an interest relating to a property, fund or transaction which is subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest in the property, fund or transaction, unless the applicant's interest is adequately represented by existing parties.

(B) Permissive intervention. Upon timely filing of his motion anyone may be permitted to intervene in an action:

(1) when a statute confers a conditional right to intervene; or

(2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive administrative order, the governmental unit upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

 IARC argues it was entitled to intervene as a matter of right because it satisfies the requirement of T.R. 24(A). Intervention as a matter of right is based upon a three part test. The intervenors must show: (1) an interest in the subject of the action, (2) disposition in the action may as practical matter impede protection of that interest, and (3) representation of the

---

**2.** Judicial review of the DDRFC's decision is pursuant to the Administrative Adjudication Act.

interest by existing parties is inadequate. Another factor which also must be considered under T.R. 24(A) or (B) is the timeliness of the request. *Llewellyn v. Beasley,* (1981) Ind.App., 415 N.E.2d 789. The facts alleged in the motion for intervention must be taken as true. *E.N. Maisel and Assoc. v. Canden Corp.,* (1980) Ind.App.. 398 N.E.2d 1366.

IARC contends that it has an "interest" in the judicial review proceeding because it is a not-for-profit corporation founded to promote the general welfare of the mentally retarded and it has 500 to 700 members living in Marion County. While it is readily apparent that IARC would be very concerned with any decision affecting group homes for developmentally disabled, we do not believe that it has an "interest" in the present case.

■ The analysis of what constitutes an "interest" under T.R. 24(A) to require intervention leads one into a legal quagmire which resolves little but the immediate decision. *See: Llewellyn v. Beasley, supra;* Shapiro, *Some Thought on Intervention Before Courts, Agencies, and Arbitrators,* 81 Harv.L.Rev. 721 (1968), 7A Wright and Miller, Federal Practice and Procedure § 1913 (1972). Since there is little agreement among the trial courts about what precise facts or circumstances satisfy the three part test for intervention as a matter of right, the determination of whether the factual circumstances satisfy the test is committed to the discretion of the trial court. *Llewellyn v. Beasley, supra.*

■ There are two lines of authority explaining or defining an interest for intervention. The first line of cases is based upon *Cascade National Gas Corp. v. El Paso Natural Gas Co.,* (1967) 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 and *Smuck v. Hobson,* (D.C.Cir.1969) 408 F.2d 175. This line of cases gives a very broad interpretation to the term. The second line of authority has adopted a narrower construction based upon the decision of *Donaldson v. United States,* (1971) 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580. Indiana has adopted the narrower construction. *Llewellyn v. Beasley, supra.* "Indiana seems to require more of an 'interest' to merit intervention as of right than the language of the rule itself might suggest". *Id.* at 795. An applicant seeking intervention must claim an immediate and direct interest in the proceedings. *E.N. Maisel and Assoc. v. Canden Corp., supra.*

■ In the present case, we believe the trial court properly denied IARC's motion to intervene as a matter of right because the judicial proceeding involved merely the review of proposed zoning requirements and did not impinge upon any property or business interests, contract rights, funds, or transactions of IARC.[3] Thus, IARC did not have an immediate and direct interest. Although IARC argues the MDC's plan leaves too much discretion to the MDC and therefore, is violative of the statute, there is no showing that the plan has resulted in the rejection of a group home.[4] Moreover, we believe the trial court could have easily concluded that the DDRFC would have adequately represented IARC's interest because the MDC sought judicial review of the DDRFC's decision. It would be very logical for the trial court to presume that the agency would adequately defend its decision. IARC argues that its interests were not adequately represented because the DDRFC did not preserve any issue for review by its failure to file a motion to correct errors in a timely fashion.[5] This argu-

---

**3.** These named factors are not intended to be an exclusive list.

**4.** We believe IARC would probably have a direct and immediate interest sufficient to intervene in a proposed group home project pending before MDC because some of its members would represent retarded citizens, who could be potential residents. Furthermore, MDC's plan would still be subject to review if it in fact were to be operated in violation of the statutes.

**5.** IARC has shown that in certain circumstances under Federal Rule 24, an intervenor can succeed as a party in interest for an appeal. (7th Cir.1980) *F.W. Woolworth Co. v. Misc. Warehousemen's* 629 F.2d 1204. Without digressing into substantive federal labor law, we believe the case is distinguishable because the

ment would require trial courts to predict the competency of counsel rather than analyze the similarity of the proposed intervenor's interests and whether that interest is adequately represented by the named party.

■ IARC alleges the trial court erred by denying its motion for permissive intervention. Pursuant to T.R. 24(B)(2), an applicant may be permitted to intervene in an action when the applicant's claim or defense have a question of law or fact in common with the proceeding and intervention will not prejudice or unduly delay the adjudication of the rights of the original parties. On appeal, a decision denying permissive intervention is only reviewable for an abuse of discretion. *United States v. Board of School Commissioners of the City of Indianapolis, Indiana* (7th Cir.1972) 466 F.2d 573. To constitute an abuse of discretion, the trial court's decision must be clearly against the logic and effect of the facts and circumstances before the court or reasonable and probable inference to be drawn therefrom. *State v. Cowdell,* (1981) Ind.App., 421 N.E.2d 667.

■ In the present case, the trial court did not abuse its discretion in denying IARC's motion for permissive intervention. It would have been very logical for the trial court to presume that the DDRFC would properly defend its prior action in the judicial review proceeding.

■ IARC also contends that the MDC plan is violative of the statutes concerning group homes for the developmentally disabled. This issue has not been preserved for appellate review because the DDRFC's did not file its motion to correct errors within sixty days. Absent an appealable issue, we do not express an opinion on the validity of the MDC's plan.

The judgment is affirmed.

RATLIFF and NEAL, JJ., concur.

individual union members had a direct interest in seeking reinstatement of their jobs and the

union chose not to appeal.