In re PATERNITY OF E.M.

Eric Eugene WOLGAMOTT, Appellant,

v.

Sheryl Victoria LANHAM, Appellee.

No. 71A04–9502–CV–48.

Court of Appeals of Indiana.

Aug. 23, 1995.

&#9753;40(2)

Gregory K. Blanford, South Bend, for appellant.

Mark S. Lenyo, South Bend, for appellee.

## OPINION

RILEY, Judge.

Petitioner–Appellant Eric Eugene Wolgamott appeals from the trial court's denial of his Motion to Intervene In Paternity Action For The Purposes Of Establishing Visitation with E.M., the daughter of his former girlfriend, Sheryl Victoria Lanham.

We affirm.

### ISSUES

Wolgamott presents two issues for our review which we consolidate and rephrase as:

1. Did the trial court erroneously deny Wolgamott's motion to intervene pursuant to Ind.Trial Rule 24?

### FACTS

E.M., born on January 19, 1983, is the minor child of Lanham and Thomas W. McClintic. Paternity of E.M. was established on August 17, 1983.

Just after E.M.'s birth, Lanham began a relationship with Wolgamott which lasted approximately six years. Wolgamott did not allege in his filings that he lived with Lanham during their relationship, and that fact was disputed when the trial court conducted a hearing on Wolgamott's motion. However, he does allege that he developed "a father/daughter relationship, during the period of the time [he] and [Lanham] were together." (R. at 7). Further, Wolgamott alleges that he "assumed a custodial and parental relationship with [E.M.] as well." *Id.* at 8.

Another child, E.W., was born to the relationship between Lanham and Wolgamott. The children have a loving sibling relationship.

After Lanham and Wolgamott ended their relationship in 1989, Wolgamott maintained a relationship with his natural daughter, E.W., and with E.M. He visited with both children, took them on vacations and outings, spoke with them on the phone, bought both children gifts for special occasions, and had over-night visitation with them. During the

summer of 1993, Wolgamott brought E.M. to his home for three days to care for her after she was hospitalized.

In 1993, Lanham and Wolgamott apparently quarreled and, in December of that year, Lanham advised Wolgamott that he would no longer be able to visit, talk with, or have any contact with E.M.

On July 21, 1994, Wolgamott filed a motion to intervene in the 1983 paternity action, seeking to establish scheduled visitation with E.M. On August 25, 1994, he filed a Motion For *In Camera* Interview, requesting that the court talk with E.M. to determine whether visitation would be in E.M.'s best interest.

After a hearing, the trial court, in a thoughtful and well-researched decision, denied Wolgamott's motions on October 13, 1994. Wolgamott now appeals.

### DISCUSSION

The trial court denied Wolgamott's motion to intervene in the paternity action for purposes of establishing visitation with E.M. because there is neither common law nor statutory authority to allow the intervention which Wolgamott sought. We agree.

Intervention in an action is controlled by T.R. 24 which states, in relevant part:

(A) Intervention of right. Upon timely motion anyone shall be permitted to intervene in an action:

(1) when a statute confers an unconditional right to intervene; or

(2). when the applicant claims an interest relating to a property, fund or transaction, which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest in the property, fund or transaction, unless the applicant's interest is adequately represented by existing parties.

(B) Permissive intervention. Upon timely filing of his motion anyone may be permitted to intervene in an action

(1) when a statute confers a conditional right to intervene; or

(2) when an applicant's claim or defense and the main action have a question of law

or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive administrative order, the governmental unit upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Wolgamott contends that he is entitled to intervene in the subject action as of right under T.R. 24(A)(2); thus, our discussion and decision is limited to intervention as of right pursuant to that subsection.

Intervention as a matter of right is based upon a three part test. *Developmental Disabilities Residential Facilities Council v. Metropolitan Dev. Comm'n of Marion County* (1983), Ind.App., 455 N.E.2d 960, 963. The intervenor must demonstrate that he has an interest in the subject of the action, that disposition in the action may as a practical matter impede protection of that interest, and that representation of the interest by existing parties is inadequate. *Id.* at 963–64. Timeliness of the request is another factor which also must be considered, *Llewellyn v. Beasley* (1981), Ind.App., 415 N.E.2d 789, 791, and the facts alleged in the intervenor' motion must be taken as true. *E.N. Maisel & Assoc. v. Canden Corp.* (1980), Ind.App., 398 N.E.2d 1366, 1367. Wolgamott's stated interest in the paternity action stems from the alleged custodial and parental relationship between himself and E.M.

"The analysis of what constitutes an 'interest' under T.R. 24(A) to require intervention leads one into a legal quagmire which resolves little but the immediate decision." *Developmental Disabilities*, 455 N.E.2d 960 at 964; *see Llewellyn*, 415 N.E.2d at 791–95; Shapiro, *Some Thought on Intervention Before Courts, Agencies, and Arbitrators*, 81 Harv.L.Rev. 721 (1968), 7A Wright and Miller, Federal Practice and Procedure Sec. 1913 (1972). In Indiana, we have

adopted a relatively narrow construction of T.R. 24 based upon *Donaldson v. United States* (1971), 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580, and our courts have required "more of an 'interest' to merit intervention as of right than the language of the rule itself might suggest." *Llewellyn,* 415 N.E.2d at 795. An applicant seeking intervention must claim an immediate and direct interest in the proceedings. *E.N. Maisel,* 398 N.E.2d at 1367. Other cases cited with approval by this court in *Hinds v. McNair* (1972), 153 Ind.App. 473, 287 N.E.2d 767, suggest that intervention requires a direct, substantial, legally protectable interest in the proceeding, *Id.* at 481, 287 N.E.2d at 772 (citing *Hobson v. Hansen* (1968), D.D.C., 44 F.R.D. 18), or a significantly protectable interest. *Hinds,* 153 Ind.App. at 481, 287 N.E.2d at 772 (citing *Donaldson,* 400 U.S. at 531, 91 S.Ct. at 542–43). Put succinctly, the intervenor of right "must have an interest recognized by law that relates to the subject of the action in which intervention is sought." *In State ex rel. Prosser v. Indiana Waste Systems* (1992), Ind.App., 603 N.E.2d 181, 187.

Wolgamott asserts that he has "a legally recognizable interest in the subject matter before the [c]ourt. In particular, Indiana courts have consistently upheld the right of a third person to seek visitation with a minor child if that third person can show that a custodial parental relationship existed between the third party and the child." Appellant's Brief at 8. However, the authority upon which he relies does not support his assertion as it pertains to the facts and circumstances of this case. Indeed, this court has awarded and upheld the rights of certain third parties, but not without reservation and vigorous dissent.

In *Collins v. Gilbreath* (1980), Ind.App., 403 N.E.2d 921, Judge Chipman affirmed a grant of visitation right to a stepfather following the suicide of the children's mother in order to facilitate the transition to the children's new life with their natural father. *Id.* at 923. However, after stating that such a decision was well within the trial court's discretion, he cautioned:

> In so holding we do not intend to diminish the rights of a natural parent concerning his or her minor children. Nor do we intend to open the door and permit the granting of visitation rights to a myriad of unrelated third persons, including grandparents, who happen to feel affection for a child. Our decision is explicitly limited to the type of factual situation presented by this case, i.e., where the party seeking visitation has acted in a custodial and parental capacity.

*Id.* at 923–24 (citing *Simpson v. Simpson* (1979), Ky., 586 S.W.2d 33 (A stepmother who had cared for child from 17 months to 6 years old should not be denied visitation.), and *Looper v. McManus* (1978), Okl.App., 581 P.2d 487 (Grandparents and stepmother who were "surrogate parents" for years were granted visitation.)); *and see also Collins,* 403 N.E.2d at 924–25 (Young, J., dissenting).

Subsequent cases which rely on *Collins* echo Judge Chipman's reservations about visitation awards to unrelated third parties. In *Krieg v. Glassburn* (1981), Ind.App., 419 N.E.2d 1015, in which maternal grandparents sought to intervene in custody proceedings supplemental to their daughter's divorce to obtain visitation with their grandchildren, Judge Sullivan found that the scope of T.R. 24(A)(2) was broad enough to permit the grandparents' intervention. *Id.* at 1017. However, in the discussion regarding visitation, he extensively quoted *Commonwealth ex rel. Williams v. Miller* (1978), 254 Pa.Super. 227, 385 A.2d 992, and adopted the standard enunciated therein:

> When seeking visitation, a third party must show reasons to overcome the parent's prima facie right to uninterrupted custody. However, the reasons need not be so convincing as in a custody case.... This test should not be understood as inviting visitation suits by well-meaning strangers. Almost by definition, a stranger to a child would have an extraordinarily heavy burden of proof to sustain in order to overcome the parent's right to uninterrupted custody. This point might be phrased differently: Except in extraordinary circumstances, the reasons that a stranger can offer are unlikely to be convincing.

*Krieg,* 419 N.E.2d at 1019 (citing *Williams,* 385 A.2d at 994).

In two more recent cases, *Caban v. Healey* (1994), Ind.App., 634 N.E.2d 540, *reh'g denied, cert. denied; In re Custody of Banning* (1989), Ind.App., 541 N.E.2d 283, awards of visitation rights to stepmothers were upheld. In *Caban,* we found that the trial court had the jurisdiction to award visitation rights to a stepmother after the dissolution of her marriage to the child's father. *Caban,* 634 N.E.2d at 543. Likewise, in *Banning* we affirmed the trial court's award of visitation to stepmother after a custodial father's death. *Banning,* 541 N.E.2d at 284–85. However, both of these cases dealt with stepparents who lived with the children and were married, prior to death or divorce, to the custodial parents of the children involved. *See also Id.* at 287–88 (Miller, J., dissenting). Indeed, all of the cases cited by Wolgamott concerned the visitation rights of extended family members or step-parents of the children concerned.

■ Wolgamott had a six-year relationship with E.M.'s mother during which he developed a "father/daughter relationship" with E.M. and "assumed a custodial and parental relationship with" her. (R. at 7, 8). However, he does not allege that he is E.M.'s stepparent, or even that he was a part of Lanham's household. Assuming these facts to be true, Wolgamott does not provide, nor can we discover, any Indiana authority which would permit us to find that he has a legally recognized interest that relates to the subject of the paternity action in which he seeks to intervene. *Prosser,* 603 N.E.2d at 187. While we understand how E.M. could develop a close and loving relationship with Wolgamott, he remains an "unrelated stranger" to the family and has no "interest" under present Indiana law.[1]

The trial court did not abuse its discretion in denying Wolgamott's motion to intervene.[2]

Judgment affirmed.

DARDEN and HOFFMAN, JJ., concur.

1. Wolgamott argues that "[t]he court conducted an exhaustive analysis of the issue of third party visitation, as well as why [Wolgamott] did not qualify. This was a disposition of the issue of whether [Wolgamott] should have visitation without any opportunity to be heard in that regard." Appellant's Brief at 11. However, Wolgamott misconstrues the trial court's analysis which was conducted to determine whether an unrelated third party had a legally recognized interest as required by T.R. 24(A)(2). Thus, the court needed to determine whether, as a matter of law, Wolgamott was permitted to intervene. Only if it found that a third party, like Wolgamott, had an interest under Indiana law would he have been allowed to present evidence to support his request for visitation.

2. In a second issue, Wolgamott argues that the Court, by erroneously determining that [Wolgamott] was not legally entitled to an order of visitation because he did not adopt the child, seek a guardianship over the child or marry the mother, undermined the requirement that an intervenor have a legally recognizable interest in the subject being litigated.... It has never been the appellate Courts' [sic] position that an unrelated third party must marry the children's custodial parent, adopt the child, or seek guardianship over the child to seek an order of visitation. Appellant's Brief at 11–12. Although this somewhat overstates the trial court's conclusion, we note that all of the authority upon which Wolgamott relies in his argument concerns the visitation rights of step-parents or family members. We interpret the trial court's conclusion, not as circumventing an existing standard, but as stating the manner in which Wolgamott, as an unrelated third party, might have established a right to intervene.