Harlan McGREGOR, et al., Plaintiffs,

v.

INDUSTRIAL EXCESS LANDFILL, INC., et al., Defendants.

Alvin J. GRIFFITH, et al., Plaintiffs,

v.

INDUSTRIAL EXCESS LANDFILL, INC., et al., Defendants.

Nos. C85–3285–A, C85–3286–A.

United States District Court, N.D. Ohio, E.D.

April 27, 1987.

Robert Gary, Richard D. Panza and Thomas A. Downie, Wickens, Herzer & Panza Co., Lorain, Ohio, for plaintiffs.

Edwin W. Oldham, Akron, Ohio, Geoffrey K. Barnes, Kathiann M. Kowalski, Squire, Sanders & Dempsey, Cleveland, Ohio, John R. Werren and Matthew Yackshaw, Day, Ketterer, Raley, Wright & Rybolt, Canton, Ohio, M.D. Obenour, Obenour, Coombs & Whited, Akron, Ohio, Joseph D. Lonardo, John W. Hoberg and Marcia J. Mengel, Vorys, Sater, Seymour & Pease, Columbus, Ohio, Ronald A. Rispo and William H. Baughman, Weston, Hurd, Fallon Paisley & Howley, Cleveland, Ohio,

and Thomas M. Parker, Roetzel & Andress, Akron, Ohio, for defendants.

## ORDER

SAM H. BELL, District Judge.

On October 31, 1985, the plaintiffs filed the two above-entitled class actions wherein damages are sought by individuals who reside in the vicinity of the Industrial Excess Landfill located near Uniontown, Ohio. In these actions the plaintiffs assert *inter alia*, that they have suffered property damage and personal injuries as a result of contamination of the air, ground and water supply caused by environmental emissions from the Industrial Excess Landfill. The sole difference between the two separate complaints is that one group of plaintiffs is alleged to represent the class of individuals residing in Summit County, Ohio, while the other group of plaintiffs is attempting to represent individuals located in Stark County, Ohio. The defendants named in these actions are the operators of the landfill and the industrial corporations who have used the landfill.

In each of these complaints the plaintiffs present seventeen claims for relief. The first three claims for relief involve private claims under sections 7002 and 7003 of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6972 and 6973, and claims under sections 106 and 107(a) of the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9606 and 9607(a). The remaining fourteen claims for relief are state causes of action based upon negligence, strict liability, nuisance, trespass, battery, assault, intentional or negligent infliction of mental and emotional distress, fraud and product liability.

Presently before this court are motions filed by the defendants to dismiss both actions for failure to state a claim for which this court has federal subject matter jurisdiction. It is not disputed by the parties that the subject matter jurisdiction of this court hinges on whether the plaintiffs' claims under RCRA and/or CERCLA can survive the defendants' motion to dismiss. Absent at least one of these federal claims

this court cannot exercise jurisdiction over the pendant claims since there is no independent subject matter jurisdiction over the fourteen state law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Ohio Inns, Inc. v. Nye*, 542 F.2d 673 (6th Cir.1976). Thus the first issue before this court concerns whether the allegations stated in the complaints are sufficient to state a federal cause of action.

When considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is constrained to accept as true the allegations of a complaint. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983), *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct 1683, 1686, 40 L.Ed.2d 90 (1974); *Lee v. Western Reserve Psychiatric Habilitation Center*, 747 F.2d 1062, 1065 (6th Cir.1984). To warrant dismissal of the complaint against the moving defendants, the court would have to find beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would justify the relief sought. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Therefore, a summary of the facts as set forth in the complaint follows.

In 1966, an industrial landfill began operating at 12646 Cleveland Avenue, N.W., Uniontown, Ohio. This landfill occupies a site of approximately thirty acres in Lake Township, Stark County, Ohio. Immediately adjacent to the landfill are several homes and various small business establishments. It is estimated that more than 2000 homes draw well water from the aquifer immediately below the landfill site with the closest water well being approximately three hundred feet from the landfill. In addition, one municipal water system has its wells located in this area. In all, more than 19,400 people reside in sections of Summit and Stark counties within three miles of the site and are served by this acquifer.

Once the landfill began operation it received chemical shipments from various in-

dustrial companies including defendants Goodyear Aerospace Corporation, Goodyear Tire & Rubber Company, B.F. Goodrich Company and Firestone Tire & Rubber Company. These chemicals, most of which were waste materials, were stored in the landfill in metal containers, barrels or drums. By June, 1984, more than 780,000 tons of waste chemicals had been disposed of at the landfill. Among the materials deposited at the site were 310,000 tons of toxic chemicals including approximately 55,000 55-gallon drums of chemicals. Some of these metal drums of chemicals have been discovered to be leaking. Included among the chemicals known to have been shipped to the landfill in significant quantities are substances which, under certain exposures may cause a variety of physiological trauma including anemia, neurological damage and others equally abhorent. Many of these chemicals are also known to be highly flammable or explosive.

On March 20, 1980, the Stark County Board of Health filed a complaint in the state common pleas court against Industrial Excess Landfill, Inc. seeking compliance with orders issued by the board of health and by the Ohio Environmental Protection Agency (OEPA). On May 28, 1980, the common pleas court approved a plan for covering and closing the landfill. Thereafter, on October 30, 1984, the State of Ohio filed a second state court action against the owners of the landfill. In this second state court action the State of Ohio sought injunctive relief to prevent the escape of methane gas from the site and the release of toxic chemicals into the surrounding ground and surface waters. The state court has issued certain injunctive relief involving the release of these chemicals.

As a result of investigations performed by OEPA, the State of Ohio recommended that the landfill at Uniontown be placed on the National Priority List for Superfund clean up. Based on this recommendation, the Environmental Protection Agency (EPA) placed the landfill on the list and has committed $400,000.00 for activities involving the clean-up of the landfill. *See* ¶ 34 of both complaints.

The plaintiffs seek in the first claim for relief contained in each action, to hold all of the defendants "jointly and severally liable for remedying and for the costs associated with remedying the endangerment." *See* ¶ 48 of the complaint in C85–3285, ¶ 42 of the complaint in C85–3286. In this count the plaintiffs assert a private right of action under sections 7002 and 7003 of RCRA, to have the owner and users of the landfill remedy the conditions at the site.

The Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.* was enacted by Congress "to promote the protection of health and the environment, and to conserve valuable material and energy resources." 42 U.S.C. § 6902. In this respect Congress specifically stated that the objective of the act was to require "the conversion of existing open dumps to facilities which do not pose a danger to the environment or to health," 42 U.S.C. § 6902(3). As part of the enforcement provision of RCRA, the legislative body expressly provided private citizens, under certain conditions, the right to commence a civil action in the United States District Courts.

The plaintiffs have alleged that the jurisdictional prerequisite for the first claim for relief is provided under sections 7002 and 7003 of RCRA. Each of these statutes must be examined to determine if the plaintiffs can maintain this particular private right of action in this court.

█ Section 7003 provides that the Administrator of the EPA "upon receipt of evidence that the past or present handling ... of any solid waste or hazardous waste may present an imminent or substantial endangerment to health or the environment, the Administrator may bring suit on behalf of the United States ... against any person." 42 U.S.C. § 6973(a). Under this statute the EPA has the express jurisdiction to commence an action, but there is no provision which expressly creates a private right of action to the public.

In this respect the plaintiffs assert that Congress implicitly authorized private suits

under section 7003. However, this court does not find that any such implicit authorization was intended. *See United States v. Hooker Chemicals & Plastics Corp.*, 101 F.R.D. 451 (W.D.N.Y.1984), *aff'd* 749 F.2d 968 (2d Cir.1984). Instead, Congress specifically addressed the role of private actions under RCRA by enacting the private enforcement provisions in section 7002, 42 U.S.C. § 6972.

The focus of section 7003 is upon the *Administrator* of the EPA bringing suit on behalf of the Government when there is reason to believe that a situation exists involving hazardous waste which would pose an imminent threat to the public welfare. There is no language in this statute which provides a private citizens group with the same authority to file a suit on behalf of the Government. The public role under section 7003 is limited to a right of participation in a public meeting after the Administrator has filed suit and prior to the entry of any settlement or consent decree with the alleged violators. *See* 42 U.S.C. § 6973(d). Since Congress expressly established a private cause of action under specified prerequisite conditions, 42 U.S.C. § 6972, and also detailed the public's role in participation when the EPA files suit under 42 U.S.C. § 6973, this court does not find that the legislative intent was to provide the public with a right to bring an action under section 7003.

■ In 1984, Congress amended the enforcement provisions of RCRA to provide the following recourse for a private citizen:

(a) In General

Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

(1)(A) *against any person* (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) *who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or*

(B) *against any person*, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, *who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment; or*

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

Any action under paragraph (a)(1) of this subsection shall be brought in the district court for the district in which the alleged violation occurred or the alleged endangerment may occur. Any action brought under paragraph (a)(2) of this subsection may be brought in the district court for the district in which the alleged violation occurred or in the District Court of the District of Columbia. The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce the permit, standard, regulation, condition, requirement, prohibition, or order, refrred to in paragraph (1)(A), to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both, or to order the Administrator to perform the act or duty referred to in paragraph (2), as the case may be, and to apply any appropriate civil penalties under section 6928(a) and (g) of this title. (Emphasis added.)

42 U.S.C. § 6972(a). In these actions the plaintiffs rely upon paragraphs (a)(1)(A) and (a)(1)(B) to support subject matter jur-

isdiction over the first claim for relief in the complaints.

The allegations in the first claim for relief, construed in a manner most favorable to the plaintiffs, would present a claim against the defendants for an alleged violation of standards, regulations, conditions, requirements under RCRA as provided in paragraph (a)(1)(A). Further, the same allegations could be construed as an imminent and substantial endangerment to the plaintiff's health and the environment of the geographic locations where they reside to satisfy the pleading requirements in paragraph (a)(1)(B). Thus, the issue which must be resolved is whether this claim is precluded by the earlier filed state actions by the State of Ohio under 42 U.S.C. § 6972(b).

But, the right of a private citizen to file an action under section 7002 of RCRA is prohibited under certain circumstances set forth in 42 U.S.C. § 6972(b) which follows in pertinent part.

(b) Actions prohibited

(1) *No action may be commenced under subsection (a)(1)(A) of this section—*

(A) prior to 60 days after the plaintiff has given notice of the violation to—

(i) the Administrator

(ii) the State in which the alleged violation occurs; and

(iii) to any alleged violator of such permit, standard, regulation, condition, requirement, prohibition, or order,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of subchapter III of this chapter; or

(B) *if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order.*

In any action under subsection (a)(1)(A) of this section in a court of the United States, any person may intervene as a matter of right.

(2)(A) No action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment to—

(i) the Administrator

(ii) the State in which the alleged endangerment may occur;

(iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B) of this section,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of subchapter III of this chapter.

(B) *No action may be commenced under subsection (a)(1)(B) of this section if the Administrator, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment—*

(i) has commenced and is diligently prosecuting an action under section 6973 of this title or under section 106 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9606],

(ii) is actually engaging in a removal action under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9604];

(iii) *has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9604] and is diligently proceeding with a remedial action under the Act* [42 U.S.C.A. § 9601 et seq.];

(iv) has obtained a court order (including a consent decree) or issued an administrative order under section 106 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9606] or

section 6973 of this title pursuant to which a responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study (RIFS), or proceeding with a remedial action.

In the case of an administrative order referred to in clause (iv), actions under subsection (a)(1)(B) of this section are prohibited only as to the scope and duration of the administrative order referred to in clause (iv).

(C) *No action may be commenced under subsection (a)(1)(B) of this section if the State, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment—*

(i) has commenced and is diligently prosecuting an action under subsection (a)(1)(B) of this section;

(ii) is actually engaging in a removal action under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9604]; or

(iii) *has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9604] and is diligently proceeding with a remedial action under that Act [42 U.S.C.A. § 9601 et seq.* (Emphasis added.)

Based upon the allegations set forth in the pleadings, the court must conclude that the earlier filed action by the Ohio Environmental Protection Agency in the Stark County Common Pleas Court precludes the plaintiffs from filing a private cause of action under subsection (a)(1)(A) of section 7002 of RCRA. In addition, the pleadings further reveal that both the Administrator and the State of Ohio have incurred costs to initiate a Remedial Investigation and Feasibility Study under CERCLA; thereby precluding a private cause of action under subsection (a)(1)(B) of section 7002 of RCRA.

The right of private citizens to institute civil litigation under RCRA is strictly limited by the jurisdictional prerequisites contained in section 7002, 42 U.S.C. § 6972(b). The congressional intent in enacting these restrictions on private actions was to prevent multiple and numerous instances of litigation involving private citizens, the states and the federal government. Instead, Congress determined that the desired result of remedying the environmental hazard could be best handled by avoiding conflicting litigation and having either the Administrator of the EPA or the State bring the suit on behalf of the public. Only when the federal and state governments fail to act to remedy the situation or file suit in either State or federal courts due to inadequate public resources did Congress envision the need for private citizens to commence actions to correct environmental hazards. Thus, the purpose of the private right of action under section 7002 of RCRA was to compliment and not conflict or compete with the EPA and states' role in investigating hazardous waste sites.

The plaintiffs' subsection (a)(1)(A) claim against the operators and users of the landfill concerns the failure of these parties to comply with regulations and standards for the storage of hazardous waste. This alleged failure on the defendants behalf to comply with various environmental standards and regulations, however, is the subject of the present OEPA action in state court. The plaintiffs' allegation that the state action has thus far not effectively remedied all of the problems at the landfill does not exempt the plaintiffs from the jurisdictional prohibition for a subsection (a)(1)(A) claim once the "State has commenced and is diligently prosecuting a civil ... action in a court of the United States or a State." 42 U.S.C. § 6972(b). Hence, the plaintiffs cannot maintain the first claim for relief in these actions as subsection (a)(1)(A) claim.

The plaintiffs attempt to preserve the first claim for relief as a subsection (a)(1)(B) action is also prohibited under section 7002(b) of RCRA. In both of the complaints filed in these actions, the plaintiffs assert the following allegations:

33. The OEPA has expended reasonable and necessary funds on activities pertaining to the investigation and clean-up of the Uniontown site, including sampling and analysis of groundwater and soil contamination.

34. The USEPA claims that it has committed in excess of $400,000.00 for activities pertaining to investigation and clean-up of the Uniontown site.

In these allegations, the plaintiffs acknowledge that both the federal and the state environmental protection agencies have expended or committed public funds for the investigation and clean-up of the landfill. Thus, the express prohibition of private suits contained in 42 U.S.C. § 6972(b)(2)(B)(iii) and (b)(2)(C)(iii), must be applied. The State of Ohio and the EPA have committed valuable public resources to address the problems caused by the landfill. The state has "expended reasonable and necessary funds on activities pertaining to the investigation and cleanup" of the landfill as provided under 42 U.S.C. § 6972(b)(2)(B)(iii). To permit a private suit to go forward under RCRA when the state has already acted would contradict the Congressional intent of avoiding duplication of efforts.

The private right of action under RCRA must also be barred since the pleading specifically alleges that the EPA has already committed $400,000 in Superfund monies to the clean-up efforts at the landfill. Section 7002 of RCRA expressly prohibits the filing of private suits when the EPA has incurred costs under section 104 of CERCLA, which is the allocation of Superfund proceeds. *See* 42 U.S.C. § 9604. The commitment of $400,000 from these funds by the EPA must as a matter of law constitute the incurring of costs under 42 U.S.C. § 6972(b)(2)(C)(iii) to prevent the filing of a private suit. Again, Congress intended to provide the private right of action under RCRA only when the EPA or the state fail to act to remedy the hazardous situation. Having found that there is no jurisdictional basis for maintaining a private cause of action under section 7002, the first claim for relief based upon RCRA in both complaints is dismissed.

■ The second claim for relief in both complaints is predicated upon section 106 of CERCLA, 42 U.S.C. § 9606. The plaintiffs assert that a private cause of action may be asserted under section 106 "to secure such relief as may be necessary to abate a condition which may be an imminent and substantial endangerment to the public health or welfare on the environment because of actual or threatened release of a hazardous substance from a facility." *See* ¶ 50 of the Complaint in C85–3285A, ¶ 44 of the Complaint in C85–3286A. In this claim for relief the plaintiffs assert that various chemicals which are recognized as hazardous substances are being and will in the future be released from the landfill site into the air, soil and ground water in geographic regions in which they reside.

Section 106 of the CERCLA provides jurisdiction in the federal courts for certain injunctive actions to abate an imminent and substantial danger to the public caused by the release of hazardous materials. This statute provides in part the following:

(a) Maintenance, jurisdiction, etc.

In addition to any other action taken by a State or local government, *when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment* because of an actual or threatened release of a hazardous substance from a facility, *he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require.* The President may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and welfare and the environment. (Emphasis added.)

42 U.S.C. § 9606(a). By the very terms of this statute the Attorney General of the United States can bring an action in the federal courts to redress the problems that the release of hazardous substances into the environment may cause to the public welfare. This statute does not confer the same right upon the private citizen to bring such a suit.

In *State of New York v. Shore Realty Corp.*, 759 F.2d 1032 (2d Cir.1985), the plaintiff sought to extend the grant of jurisdiction to bring suit under section 106 of CERCLA to parties other than the Attorney General of the United States. In rejecting this expansion of the jurisdictional authorization to bring suit, the Second Circuit stated the following:

> The standard for seeking abatement under section 9606 is more narrow than the standard of liability under section 9607. Section 9606 authorizes injunctive relief only where EPA "determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment." Section 9607 contains no such limitation.
>
> .    .    .    .    .
>
> If there were any doubt about the statutory language, the legislative history would compel us to reject the State's argument. Congress specifically declined to provide states with a right to injunctive relief. The early Senate version empowered either EPA "or the State" to seek injunctive relief, *see* S. 1480, 96th Cong., 2d Sess. § 3(d), 126 Cong.Rec. 30,908, *reprinted in* 1 CERCLA *Legislative History, supra,* at 484–85, yet the compromise limited that power to EPA alone, *see* 42 U.S.C. § 9606(a). Moreover, the House version, which authorized EPA to order cleanup, *see* H.R. 7020, 96th Cong., 2d Sess. § 3041(a), 126 Cong.Rec. 26,775–76, *reprinted in* 2 CERCLA Legislative History, *supra,* at 406–12—rather than to seek an injunction in federal court—did not give states that authority, even though the National Association of Attorneys General urged Congress to extend the same powers to the states as it gave to the federal

government. See 126 Cong.Rec. 26,762–62, *reprinted in* 2 CERCLA Legislative History, supra.

*Id.* at 1049–50.

The plaintiffs assert that *Shore Realty Corp.* can be distinguished since the plaintiff in that action was the State of New York. It is argued that the Second Circuit has only found that *a state* may not assert jurisdiction under section 106 of CERCLA, but the issue in this action is whether *a private citizen* has a right of action. However, the court finds that the difference between whether the state can assert jurisdiction or whether a private citizen can assert jurisdiction is not capable of a viable legal distinction. In sum, this court concurs in the reasoning of the Second Circuit and finds that Congress intended only the Attorney General, through the EPA, to have the ability to invoke the jurisdiction of this court under section 106 of CERCLA, 42 U.S.C. § 9606. Hence, the plaintiffs' second claim for relief in both complaints is insufficient as a matter of law.

The third claim for relief in these actions is predicated upon section 107 of CERCLA, 42 U.S.C. § 9607. The plaintiffs assert in this claim for relief that "[t]he United States, the State of Ohio and Plaintiffs have incurred and will continue to incur costs in connection with activities under CERCLA, including costs of investigation, clean up, removal and remedial action at the facility." See ¶ 63 of the Complaint in C85–3285A, ¶ 57 of the Complaint in C85–3286A. The remedy which the plaintiffs are seeking in this claim for relief is that the defendants be held "jointly and severally liable under CERCLA for all costs of investigation, clean-up removal and remedial actions incurred by the United States Government, State of Ohio, and Plaintiffs concerning the Uniontown site." ¶ 65 of the Complaint in C85–3285A, ¶ 59 of the Complaint in C85–3286A.

■ Under section 107 of CERCLA, a private right of action has been recognized by the courts for the recovery of costs incurred by a private party to clean up or respond to a hazardous waste problem. *Wickland Oil Terminals v. Asarco*, 792

F.2d 887, 891 (9th Cir.1986); *Walls v. Waste Resource Corp.*, 761 F.2d 311, 318 (6th Cir.1985); *Allied Towing v. Great Eastern Petroleum Corp.*, 642 F.Supp. 1339 (E.D.Va.1986); *Adams v. Republic Steel Corp.*, 621 F.Supp. 370, 376 (W.D. Tenn.1985); *Levin Metals Corp. v. Parr–Richmond Terminal Co.*, 608 F.Supp. 1272, 1275 (N.D.Cal.1985); *Artesian Water Co. v. New Castle County*, 605 F.Supp. 1348, 1356 (D.C.Del.1985); *Jones v. Inmont Corp.*, 584 F.Supp. 1425, 1429 (S.D. Ohio 1984); *Pinole Point Properties, Inc. v. Bethlehem Steel Corp.*, 596 F.Supp. 283, 293 (N.D.Cal.1984); *Bulk Distribution Centers, Inc. v. Monsanto Co.*, 589 F.Supp. 1437, 1442–44 (S.D.Fla.1984); *City of Philadelphia v. Stepan Chemical Company*, 544 F.Supp. 1135 (E.D.Pa.1982). In pronouncing the law in this circuit, Judge Merritt stated the following:

> Section 9607(a)(4) provides in pertinent part that owners of waste sites and other responsible parties under section 9607(a) "shall be liable for—(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan; (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan." District Court decisions have been virtually unanimous in holding that section 9607(a)(4)(B) creates a private right of action against section 9607(a) responsible parties for the recovery of "necessary costs of response incurred by any other person consistent with the National Contingency Plan."

> •    •    •    •    •

> Although the legislative history of CERCLA is vague, reflecting the compromise nature of the legislation eventually enacted, it is clear that the statute was designed primarily to facilitate the prompt cleanup of hazardous waste sites by placing the ultimate financial responsibility for cleanup on those responsible for the hazardous wastes. *Stepan Chemical*, 544 F.Supp. at 1143. Allowing a private action to recover response costs from responsible parties under sec-

tion 9607(a)(4)(B) is thus consistent with both the language of section 9607(a)(4)(B) and with the congressional purpose underlying CERCLA as a whole.

(Footnotes omitted.) *Walls v. Waste Resource Corp., supra*, 761 F.2d 317–318.

The issue before the court involving the third claim for relief is not whether a private cause of action is permitted under section 107 of CERCLA, but whether the plaintiffs have, as a matter of law, stated a claim which can survive a motion to dismiss. The defendants assert that the complaints are deficient in that the plaintiffs have failed to allege that *they*, plaintiffs, have incurred any necessary response costs within the meaning of the Superfund Act prior to the filing of these actions.

In the pleadings before the court the plaintiffs have not specifically pled that they have in fact incurred any "response" costs as defined under the act. Under the definitional section of CERCLA, a response is defined as meaning "remove, removal, remedy, and remedial actions, all such terms (including the terms "removal" and "remedial action") include enforcement activities related thereto." 42 U.S.C. § 9601(25). None of the allegations in the complaints concern any costs which the plaintiffs have actually incurred to remove or remedy the conditions at the landfill. The allegation of any actual costs being incurred all involve the expenditures made by the State of Ohio or the EPA.

The Congressional intent in providing private citizens a right to recover response costs was to shift the burden of financial responsibility to the parties who caused or created the situation. Consistent with this legislative purpose is the requirement that the private party seeking to come under this provision actually incur some recovery costs prior to the filing of an action. *See Levin Metals Corp. v. Parr–Richmond Terminal Co., supra*, 608 F.Supp. at 1275–76. Here the plaintiffs have not alleged that they have expended any monies which would be considered necessary costs of response to the conditions at the landfill. Hence, the plaintiffs have failed to state a claim in their third claim for relief that

would entitle them to maintain an action under section 107 of CERCLA, 42 U.S.C. § 9607(a)(4)(B).

Having found that the three federal claims presented in both complaints are deficient as a matter of law, the court must now consider the pendent state claims. Since there has been no independent subject matter jurisdiction alleged to support these claims in federal court, the remaining state claims must be dismissed for lack of subject matter jurisdiction under *United Mine Workers v. Gibbs, supra,* 383 U.S. at 725–26, 86 S.Ct. at 1139.

Accordingly, the defendants' motion to dismiss is hereby granted and both actions are dismissed.

IT IS SO ORDERED.