UNITED STATES of America, and
State of Illinois, Plaintiffs,

v.

OUTBOARD MARINE CORPORATION,
and American National Bank,
Defendants.

Nos. 88 C 8571, 88 C 8572.

United States District Court,
N.D. Illinois, E.D.

June 3, 1991.

Linda A. Wawzenski, Asst. U.S. Atty., Victor Franklin, Asst. Regional Counsel, U.S. E.P.A., Region V, Chicago, Ill., Steven J. Willey, Trial Attorney Environmental Enforcement Section, U.S. Dept. of Justice, Washington, D.C., for plaintiffs.

Douglas P. Roller, W. Gerald Thursby, Rooks, Pitts and Poust, Jeffrey C. Fort,

---

Maribeth Flowers, Sonnenschein Nath & Rosenthal, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court is the motion of Outboard Marine Corporation ("OMC") to compel the United States Environmental Protection Agency ("EPA") to disclose information relating to oversight costs in connection with confidential business information ("CBI") of Black & Veatch, an Alternative Remedial Contract Support ("ARCS") contractor employed by the EPA. In essence, OMC argues that the EPA has no authority, under the consent decree, to determine that cost information supplied by its ARCS contractor constitutes CBI.[1] For the following reasons, the court denies the motion.

After years of bitter litigation, the parties in this case entered into a consent decree concerning the clean up of Waukegan Harbor, at a cost of $19,000,000.00. Pursuant to the consent decree, OMC is required to reimburse the EPA for overseeing the clean up of the harbor. On March 29, 1990, the EPA sought reimbursement of $136,465.83 for the cost of overseeing the clean up between April 27, 1989 and December 31, 1989. OMC only disputes $50,044.29 of that amount, which relates to payments for the EPA's ARCS contractor, Black & Veatch. OMC asserts that the documentation submitted by the EPA with its demand for oversight payments is not sufficiently detailed to support a demand for payment of amounts due to the ARCS contractor. After attempts to settle this matter failed, OMC brought this motion for dispute resolution. Under section XII of the consent decree, this court has jurisdiction to settle disputes which cannot be worked out through informal means.

OMC argues that the consent decree requires the disclosure of *all* supporting documentation for oversight and implementation costs. However, the EPA submits that it has provided all documentation nec-

essary under the consent decree to support payment of these costs. The EPA has submitted a cumulative cost summary of all invoices received from Black & Veatch and independent confirmation of payment from the United States Treasury. In an effort to resolve this dispute, the EPA also provided OMC with vouchers submitted by Black & Veatch in relation to the site. However, the EPA redacted certain information from these vouchers. The EPA contends that the redacted information constitutes CBI, which is protected by 40 C.F.R. part 2, subpart B. The EPA notes that ARCS contracts are awarded through a competitive process. The EPA believes that release of a breakdown of costs of an ARCS contractor would allow competitors of the ARCS contractor to discover details pertaining to the bidding process for EPA contracts. Therefore, the EPA argues that release of this material would substantially harm the competitive position of Black & Veatch. Nevertheless, OMC argues that it is entitled to examine *all* supporting documentation, including the information redacted from the vouchers.

As noted by the EPA, the parties cannot enter into a consent judgment which is inconsistent with the statutory framework under which the action arose. *Local Number 93 v. City of Cleveland*, 478 U.S. 501, 526, 106 S.Ct. 3063, 3077–78, 92 L.Ed.2d 405 (1986); *City of Las Vegas, Nev. v. Clark County, Nev.*, 755 F.2d 697, 702 (9th Cir.1985); *U.S. v. Motor Vehicle Manufacturers Assoc.*, 643 F.2d 644, 650–51 (9th Cir.1981). While a consent decree is interpreted under general contract principles, a court may construe the consent decree in light of the statutory basis upon which the suit was originally brought. *City of Las Vegas*, 755 F.2d at 702. Therefore, it is wholly appropriate for this court to consider the purpose of CERCLA when construing this consent decree.

Moreover, the consent decree itself specifically states that it is entered into pursuant to CERCLA, and that "all actions taken pursuant to, and in accordance with, this

---

1. As noted by the Seventh Circuit, cases of this type tend to be "a symphony of acronyms." *North Shore Gas v. Environmental Protection Agency*, 930 F.2d 1239, 1242 (7th Cir.1991).

Consent Decree shall be afforded all protections contained in CERCLA as it may be amended from time to time." *See* Consent Decree, p. 63, Section XX. Therefore, the application of principles found in CERCLA is justified in this case.

■ CERCLA provides that information submitted to the EPA in connection with an action under CERCLA may be considered confidential. *See* 42 U.S.C. § 9604(e)(7).[2] 42 U.S.C. § 9604(e)(7)(E) provides:

No person required to provide information under this chapter may claim that the information is entitled to protection under this paragraph unless such person shows each of the following:

(i) Such person has not disclosed the information to any other person, other than a member of a local emergency planning committee established under title III of the Amendments and Reauthorization Act of 1986, an officer or employee of the United States or a State or local government, an employee of such person, or a person who is bound by a confidentiality agreement, and such person has taken reasonable measures to protect the confidentiality of such information and intends to continue to take such measures.

(ii) The information is not required to be disclosed, or otherwise made available, to the public under any other Federal or State law.

(iii) Disclosure of the information is likely to cause substantial harm to the competitive position of such person.

(iv) The specific chemical identity, if sought to be protected, is not readily discoverable through reverse engineering.

The EPA has the authority to determine what constitutes CBI. 40 C.F.R. section 2, subsection B.[3]

■ In this case, the EPA has determined that specific information relating to bids submitted by Black & Veatch would substantially harm the competitive position of that ARCS contractor, and thus constitutes CBI which is not subject to disclosure. Although the EPA has focused on the third requirement of the above cited provision, it is reasonable to infer that the other factors, where relevant, are also present. For example, it is reasonable to infer that the EPA has not disclosed information concerning Black & Veatch's contracting bids to anyone other than a governmental agency, as the purpose behind the EPA's finding of confidential business information is to keep such information out of the public purview. Moreover, neither party has cited, and the court cannot find, a Federal or State statute which requires the disclosure of such information to OMC.[4] Therefore, the EPA has met the requirements of the statute, and can properly designate the information sought as CBI. Nothing in the consent decree divests the EPA of its statutory ability to withhold certain information on the grounds that it constitutes CBI. Defendant cannot employ the consent decree to gain access to information which it would otherwise not be entitled to receive.

Accordingly, defendant's motion to compel disclosure of confidential business information is denied. Defendant is ordered to pay to the EPA any outstanding

---

**2.** 42 U.S.C. § 9604(e)(7) states, "Any records, or information obtained from any person under this section (including records, reports or information obtained by representatives of the President) shall be available to the public, except that upon a showing satisfactory to the President (or the State, as the case may be) by any person that the records, reports, or information, or particular part thereof (other than health or safety effects data), to which the President (or the State, as the case may be) or any officer, employee, or representative has access under this section if made public would divulge information entitled to protection under section 1905 of Title 18, such information or particular portion thereof shall be considered confidential in ac-

cordance with the purposes of that section, except that such record, report, document or information may be disclosed to other officers, employees, or authorized representatives of the United States concerned with carrying out this chapter, or when relevant in any proceeding under this chapter."

**3.** *See also* 40 C.F.R. § 2.310.

**4.** The fourth factor seems to concern itself with disclosure of chemical formulas which are the subject of patents or trade secrets. As such, this factor is not applicable here.

amounts relating to work done by Black & Veatch, in compliance with the terms of the consent decree.[5]

IT IS SO ORDERED.

---

5. The court notes that, on May 16, 1991, OMC submitted a second motion for dispute resolution ("the 1991 motion"). OMC admits that the 1991 motion raises the same issues, relating to the documentation of costs paid to four ARCS contractors, as are raised in the present motion. Defendant's Motion, p. 3, par. 3. Defendant incorporates the pleadings submitted in this motion as support for its most recent motion. Defendant's Motion, p. 5, par. 9. In light of the court's holding today that the EPA is not required, under either the consent decree or CERCLA, to submit supporting materials which constitute confidential business information,

the 1991 motion for dispute resolution is denied, and defendant is ordered to pay the $48,-334.09 it has withheld.