STATE of Indiana on the Relation of Kathy PROSSER, Commissioner, Indiana Department of Environmental Management (plaintiff below), and City of Gary (defendant below), Appellants,

v.

INDIANA WASTE SYSTEMS, INC. (intervenor below), Appellee.

No. 45A04–9102–CV–56.[1]

Court of Appeals of Indiana, Fourth District.

Nov. 23, 1992.

---

1. Case transferred to this office on May 19, 1992, by order of the Chief Judge.

Timothy J. Junk, Indianapolis, John C. Hamilton, Doran, Blackmond, Ready, Hamilton & Williams, South Bend, for appellant-plaintiff Indiana Dept. of Environmental Management.

Lewis D. Beckwith, Alan L. McLaughlin, James W. Clark, Baker & Daniels, Indianapolis, Gilbert King, Jr., Gary, for appellant City of Gary.

Robert F. Parker, Joy L. Colwell, Beckman, Kelly and Smith, Hammond, for appellee-intervenor, Indiana Waste Systems, Inc.

Steven R. Crist, Singleton Levy & Crist, Munster, Kevin M. Murphy, Latham & Watkins, Chicago, Ill., William J. Brown, Emmens, Hurd, Kegler & Ritter, Columbus, Ohio, for amici curiae.

2. The parties have filed three records in this case. One record consists of four volumes and contains 835 pages. This record will be referred to as Record I. Another record consists of nine volumes and contains 1940 pages. This

SHIELDS, Judge.

The Indiana Department of Environmental Management (IDEM) and the City of Gary (Gary) appeal the judgment which the trial court entered after it rejected an agreed judgment submitted by IDEM and Gary. Indiana Waste Systems, Inc. (IWS) cross appeals the trial court's refusal to grant IWS certain litigation expenses.

We affirm in part and reverse in part with instructions to approve the proposed agreed judgment.

## ISSUES

The parties have raised various issues in their briefs, which we rephrase as:

1. Whether the trial court erred in finding Gary in contempt of court.

2. Whether the trial court erred in refusing to approve the agreed judgment.

3. Whether the trial court erred by granting IWS leave to intervene.

4. Whether the trial judge erred by refusing to recuse himself from the case.

5. Whether the trial court erred by refusing to award IWS certain litigation expenses as costs.

## FACTS [2]

The Appellants in this case, IDEM and Gary, were originally adversaries. IDEM was the plaintiff, Gary the defendant. After pursuing their respective roles as adversaries over the years that comprise the life of this case, IDEM and Gary eventually resolved their dispute and submitted an agreed judgment to the trial court. However, before the trial court acted upon the agreed judgment, a third party, IWS, filed a motion to intervene, which the trial court granted. After IWS joined the case, the trial court rejected the agreed judgment submitted by IDEM and Gary, and entered its own judgment relative to the issues. The facts most relevant to the appeal are set out below.

Record will be referred to as Record II. The last record consists of one volume and is labeled "Supplemental Record." It will be referred to as the Supplemental Record.

In 1977, the Indiana Stream Pollution Control Board, the administrative predecessor of IDEM, filed a complaint alleging that conditions at a solid waste disposal facility owned by Gary (the Dump) violated an agreed administrative order between itself and Gary. The Board sought preliminary and permanent injunctive relief. On January 29, 1980, the trial court issued a preliminary injunction. On appeal, this court affirmed the trial court's decision. *See City of Gary v. Stream Pollution Control Bd.* (1981), Ind.App., 422 N.E.2d 312. Subsequently, in a memorandum decision, this court reversed the trial court's denial of IDEM's request for a permanent injunction. On June 21, 1985, the trial court issued a permanent injunction which mandated that Gary close the Dump. On July 9, 1985, the trial court vacated the injunction on Gary's motion and ordered the parties to explore settlement. In the meantime, Gary was ordered to apply six inches of impermeable soil on a daily basis to the Dump.

On June 1, 1988, IDEM filed a contempt petition, claiming Gary had failed to comply with the trial court's order specifying a daily soil cover. On November 17, 1988, the trial court issued its judgment finding Gary in civil contempt, ordering Gary to cease disposal activity immediately and to cease operating the Dump in 180 days, and fining Gary $375,000. This order was stayed on November 21, 1988. On December 23, 1988, IDEM and Gary entered into an agreed modification (1988 Agreed Judgment) of the November order that allowed disposal activity at the Dump to continue until January 1, 1990, and established June 30, 1991, as the date by which Gary must complete closure of the Dump.

On January 2, 1990, Gary filed a motion to stay enforcement of the 1988 Agreed Judgment and the trial court temporarily stayed the January 1, 1990 deadline. On February 15, 1990, the trial court denied the motion to stay enforcement and or-

dered the parties to comply with the 1988 Agreed Judgment which specified that the operation of the Dump cease and closure commence. This February 15, 1990 order was stayed "insofar as the Order requires [Gary] to cease operating [the Dump] or commence or complete [its] closure," in an order dated February 23, 1990. The trial court continued the stay a second time on March 23, 1990, pending a hearing scheduled for May 11, 1990.

In May of 1990, Gary and IDEM worked toward settlement. At that time, Gary was negotiating with IWS [3] for IWS to operate the Dump. IWS is a company that owns property near the Dump which it desires to operate as a waste disposal facility.

Because IDEM and Gary were actively pursuing a resolution of the litigation, IDEM and Gary sought, and believed they obtained, a continuance of the hearing scheduled for May 11, 1990; hence neither party appeared at the hearing. In the parties' absence, the trial court issued an order directing the parties to obey the 1988 Agreed Judgment, pursue all remedies necessary to accomplish compliance with that judgment, and to appear on May 30, 1990, to report their compliance with the 1988 Agreed Judgment or, alternatively, to show cause why they should not be held in contempt.

At the May 30, 1990 proceeding, Gary reported that its negotiations with IWS were not complete and requested additional time. IDEM reported that it was waiting for Gary to obtain a commitment from a third party before engaging in further negotiations. The trial court instructed Gary to submit a draft of the agreement it had been negotiating with IWS and directed the parties to reconvene the next day, May 31, 1990.

The next day, Gary informed the trial court that it was unable to reach an agreement with IWS and requested another extension to seek another third party. The

---

3. Gary and IWS have engaged in litigation concerning the Dump. In 1988, IWS obtained a preliminary injunction against Gary by claiming the Dump was a nuisance that posed a risk of contaminating IWS's property. The prelimi-

nary injunction required Gary to take certain remedial actions at the Dump. The terms of the preliminary injunction assume that Gary will continue to operate the Dump.

trial court continued the matter until June 4, 1990.

On June 4, 1990, Gary announced that it had reached an agreement with Mid–American Waste Systems of Indiana (Mid–American) and presented IDEM and the trial court with a memorandum of understanding between Gary and Mid–American. At the end of the hearing, the trial court issued an order in which it found that an agreement did not exist, and that Gary was in contempt for "willfully violat[ing] and refus[ing] to obey [the trial] court's Judgment of December 23, 1988." Record I at 547. The trial court ordered Gary to pay $1,540,000 as a "fine and civil penalty for contempt at the rate of Ten Thousand Dollars ($10,000.00) per day for 154 days, being the elapsed time from January 2, 1990, when the [Dump] was to stop receiving solid waste to the present day." *Id.* The trial court specified a $10,000 per day "fine and civil penalty" to be imposed each additional day that the Dump accepted solid waste, ordered forfeiture of all revenues Gary collected in connection with operating the Dump after January 1, 1990, and, "to ensure compliance" with its order, ordered, with delayed enforcement, that the Mayor of Gary and the President of the Gary Common Council be "remanded to the custody of the Sheriff of Lake County, Indiana, for incarceration in the Lake County Jail for a period of thirty (30) days...." *Id.* at 547–48.

On June 5, 1990, the trial court held a status hearing to review Gary's compliance with the June 4, 1990 order. Gary and IDEM appeared and submitted an agreed judgment to which was attached an agreement between Gary and Mid–American.

Under the Gary/Mid–American agreement, Mid–American was to operate the Dump, and perform remedial activities, and to be responsible for closure and post-closure activities at the Dump. The agreement between Gary and Mid–American required the Gary Common Council's approval. It further provided that "[f]ailure of the Common Council to approve the attached Agreement shall render this Agreed Judgment null and void." Record I at 759.

The trial court advised it would review the proposed agreed judgment.

The following day, IDEM and Gary submitted a joint motion to stay the trial court's order of June 4, 1990. The trial court granted the stay until July 2, 1990, stated it would take the agreed judgment under advisement pending final action by the Gary Common Council, and set a hearing for July 2, 1990.

On June 29, 1990, IWS filed a motion to intervene and a complaint, and the trial court continued the July 2 hearing and the stay until July 27, 1990. IWS filed its amended complaint in intervention on July 19, 1990. On July 27, 1990, the trial court granted IWS's motion to intervene, continued its stay of the June 4, 1990 sanctions order, and delayed the hearing on the agreed judgment.

Eventually, IWS and Gary filed motions seeking a summary ruling and IDEM filed a motion for judgment on the pleadings.

The trial court issued an "omnibus decree" on December 21, 1990. In this decree, the trial court instructed the parties to choose one of two alternative resolutions of the case.[4] The trial court requested the

---

**4.** The two alternatives were:
 a. strict enforcement of the 1988 Agreed Judgment and the court's June 4, 1990, order;
 b. strict compliance with the State's March 12th plan;
 c. denial of the June 5th agreed judgment;
 d. permanent injunction enjoining operation of the Dump;
 e. an accounting; and
 f. denial of all pending motions for summary rulings and for further discovery.
 or:
 a. approve the June 5, 1990, agreed judgment, provided that Mid–American subject itself to the jurisdiction of the court and do certain remediation of the Dump within sixty days;
 b. vacate the court's June 4, 1990, order;
 c. grant IWS the right to construct and operate the Glenwood Ridge site (the J Pit) consonant with the Jasper Superior Court decree of December 21, 1987, and require IDEM to immediately issue its permit therefor, and provide for the respective operations of IWS;
 d. relinquish or reconvey to IWS the ten acre buffer strip referenced in the Jasper Superior Court decree of December 21, 1987;

parties to inform it of their respective preferences in writing by December 28, 1990.

On January 10, 1991, City filed a motion requesting the trial judge to recuse himself because the judge was a prior client of an attorney who represented the company that sold IWS the land it sought to operate as a waste disposal facility.

On February 15, 1991, the court entered the judgment from which IDEM and Gary presently appeal. In that judgment, the trial court denied Gary's motion for recusal, denied IWS's motion for litigation costs incurred as a result of responding to the motion for recusal, denied IDEM and Gary's requests to approve the agreed judgment, dismissed without prejudice IWS's amended complaint as moot "with the exception of that portion related to Ind.Code Sec. 13-7-19-2," Record II at 1680, and reaffirmed its December 23, 1988, February 15, 1990, and June 4, 1990, orders.

## DISCUSSION

### I.

■ Gary argues the trial court erred in finding Gary in contempt of court for failing to obey the 1988 Agreed Judgment, which, in part, required Gary to cease operating the Dump in January of 1990.

■ The determination of whether a party is in contempt of court is a matter left to the discretion of the trial court. *Benda v. Benda* (1990), Ind.App., 553 N.E.2d 159, 163. We review the trial court's decision for an abuse of discretion, and will reverse only if it is against the logic and effect of the facts and circumstances before the court and any reasonable inferences arising therefrom. *Id.*

Gary claims it cannot be in contempt for disobeying the 1988 Agreed Judgment because the trial court had on numerous occasions between January 1990 and June 4, 1990, (the date the trial court found Gary in contempt) stayed the 1988 Agreed Judgment. We must agree; it is against the logic and effect of the facts and circumstances presented in this case for the trial court to stay an order and then find the party requesting the stay in contempt for disobeying the stayed order.[5]

However, IWS argues the contempt finding is proper because Gary ignored the trial court's order of February 15, 1990, requiring Gary to submit remediation proposals in conformity with the 1988 Agreed Judgment, and failed to appear at the previously set May 11, 1990, hearing. This argument is unavailing because the trial court based its contempt finding on Gary's alleged failure to "obey [the trial] court's Judgment of December 23, 1988," rather than on its conduct of February 15, 1990, or May 11, 1990. Record I at 547.

Thus, we reverse the trial court's judgment adjudicating Gary in contempt and imposing a penalty therefor.

### II.

■ IDEM and Gary argue the trial court abused its discretion when it refused to approve the submitted agreed judgment. They argue that, in the absence of fraud or lack of consent, the trial court's role in Indiana in approving agreed judgments is merely ministerial. IWS, relying on federal case law, argues the agreed judgment, as a modification of the 1988 Agreed Judgment, was not timely under Ind.Trial Rule 60(B), and further argues the trial court has discretion to evaluate the substance of the agreement, and, when the trial court

---

e. tie the obligations of IWS to the operation of the J Pit; and
f. give Gary the right and opportunity to inspect IWS's operation of the J Pit while ordering that Gary not impose any fees, taxes or charges on the revenues derived from the operation of the J Pit and, further, not take any action to unduly or unreasonably restrict the ability of IWS to operate the J Pit.
Record II at 1263.

5. Further, as stated by the trial court, because "the sanction imposed ... was coercive, not punitive, the contempt order was clearly civil." Record II at 1677. Civil contempt orders are for the benefit of a party. In this case, as evidenced by the agreed judgment, IDEM, the party for whose benefit the sanction was imposed, is satisfied that the goal of the coercive order has been accomplished.

finds the agreement unreasonable, as in the present case, the court may refuse to approve the agreement. Thus, according to IWS, a trial court has "inherent jurisdiction and concomitant discretion to review any proposed settlement for its compliance with the law and public policy of the state." Appellee's Brief at 18.

Although the proper role of a trial court vis-a-vis an agreed judgment or a consent decree is a matter of scholarly debate,[6] our courts have delineated the proper role of courts in Indiana. Unlike the federal courts, which, in some circumstances, appear to have discretion to review and evaluate the substantive provisions of the parties' agreed judgment prior to approving it,[7] binding supreme court precedent holds that an Indiana trial court, absent a claim of fraud or lack of consent, must approve the agreed judgment.[8]

> When, as in the instant case, the parties plaintiffs and defendants stipulate the findings of facts and the conclusions of law and hand these stipulations to the judge in open court ... the court is not called upon to perform a judicial act. The writing is in fact a consent finding and judgment, and the duty of the court is ministerial—to have the writing entered as agreed upon.
>
> \* \* \* \* \* \*
>
> That there may have been errors in the agreed stipulation of facts or in the agreed conclusions of law cannot matter

now for the parties had a right to make the stipulations as they desired. It was their lawsuit.... Moreover when this agreed stipulation was presented to the trial judge, he had no judicial function to perform. He had only the ministerial duty of ordering the agreement entered of record. Such a decree does not represent the judgment of the court. It is merely the agreement of the parties, consented to by the court.

*State v. Huebner* (1952), 230 Ind. 461, 467, 104 N.E.2d 385, 387, 388. *See Drost v. Professional Building Service Corp.* (1978), 176 Ind.App. 172, 174, 375 N.E.2d 241, 243.

■ Further, the 1988 Agreed Judgment, as a contracted-for agreed judgment, like any contract, can be modified by the parties at any time. *See Ingoglia v. The Fogelson Companies, Inc.* (1988), Ind.App., 530 N.E.2d 1190, 1199 ("The determination of whether a consent judgment may be modified, (sic) must be evaluated using contract principles."). Thus, T.R. 60(B) is inapplicable to the modification of a pre-existing agreed judgment agreed to by the parties to that judgment.

Here, the record fails to reveal the existence of any claim of fraud or lack of consent to the agreed judgment; therefore, the trial court erred when it refused to perform its ministerial duty of approving the judgment and ordering it entered of record.[9]

---

6. *See, e.g.,* Thomas M. Mengler, *Consent Decree Paradigms: Models Without Meaning,* 29 B.C.L.Rev. 291 (1988); Judith Resnick, *Judging Consent,* 1987 U.Chi.Legal F. 43 (1987).

7. *See, e.g., Citizens For A Better Env't v. Gorsuch* (1983), D.C.Cir., 718 F.2d 1117, *cert. denied, Union Carbide Corp. v. Natural Resources Defense Council, Inc.* (1984), 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373; *United States v. Outboard Marine Corp.* (1991), N.D.Ill., 764 F.Supp. 1315; *United States v. Seymour Recycling Corp.* (1982), S.D.Ind., 554 F.Supp. 1334.

8. The trial court recited its opinion of Indiana law in its February 15, 1990, judgment:

 1. The Agreed Order [of December 23, 1988,] is, in effect, a judgment entered by consent of the parties. It thus has both the

force of a judgment and the effect of a contract.

 \* \* \* \* \* \*

 3. A judgment entered by consent which does not require the Court's continuing supervision of any changing conduct or conditions may not be altered or modified by the Court in any material manner, absent a showing by [Gary] of fraud, mistake or other contractual ground for modification. *Ingoglia v. The Fogelson Companies, Inc.* (1988), Ind.App., 530 N.E.2d 1190; *Hendrickson v. Hendrickson* (1988), Ind.App., 531 N.E.2d 544.

Record I at 209.

9. The agreed judgment submitted on June 5, 1990, included the provision that the agreement between Gary and Mid–American was subject to the approval of the Gary Common Council. The agreed judgment, in contrast to the agreement between Gary and Mid–American, was not con-

### III.

IDEM and Gary argue the trial court erred by granting IWS's motion for intervention of right. Gary argues the trial court should have denied IWS's motion to intervene because the motion was untimely under Ind.Trial Rule 24(A). IDEM argues the trial court erred because IWS failed to comply with the pre-suit requirements of the statute under which IWS asserts an interest in the proceeding.

The trial court's determination of a motion to intervene is reviewed for an abuse of discretion. *Developmental Disabilities Residential Facilities Council v. Metropolitan Dev. Comm'n* (1983), Ind. App., 455 N.E.2d 960, 964. In reviewing the trial court's exercise of its discretion, the facts alleged in the motion must be taken as true. *Id.* At the same time, the decision on a motion to intervene turns on the sufficiency of the claim stated. *E.N. Maisel & Assocs. v. Canden Corp.* (1980), Ind.App., 398 N.E.2d 1366, 1368.

Because the trial court granted IWS leave to intervene as an intervenor of right,[10] and because reversal is mandated by the failure of IWS's amended complaint to sustain an action under IC 13–6–1–1, we address only that issue.

Under T.R. 24(A)(2), an intervenor of right must have an interest recognized by law that relates to the subject of the action in which intervention is sought. *See Llewellyn v. Beasley* (1981), Ind.App., 415 N.E.2d 789. IWS argues its interest is "to prevent continuing contamination of its adjacent property." Appellee's Brief at 52.

However, in its complaint tendered with the motion to intervene and in its subsequent amended complaint in intervention IWS failed to claim a protected interest other than its claimed protected interest in the environment. In fact, IWS specifically claimed it was bringing the action pursuant to "Ind.Code § 13–6–1–1(a)(3) for the purpose of protecting the environment from significant pollution, impairment or destruction." Record I at 575; Record II at 446. Assuming IWS's claimed protected interest in the environment could be sufficient to satisfy the protected interest requirement of T.R. 24(A)(2), it is not sufficient in this particular situation.

IC 13–6–1–1 provides in pertinent part: [A] corporation ... maintaining an office in Indiana ... may bring an action for declaratory and equitable relief in the name of the state against ... a city ... for the protection of the environment of Indiana.... A ... corporation ..., *as a condition precedent to maintaining an action, must give notice* in writing by registered or certified mail to the department of natural resources, the department of environmental management, and the attorney general, who shall promptly notify all state administrative agencies having jurisdiction over or control of the pollution, impairment, destruction, or protection of the environment for which relief is sought.

\* \* \* \* \* \*

[A corporation] ... that brings an action under this section may not maintain the action unless ... the agency that commences an administrative proceeding or a

---

ditioned upon approval by the Common Council. Rather, the agreed judgment provided that if the Common Council did not approve the agreement between Gary and Mid–American, then and only then would the agreed judgment be "null and void." Record I at 759. Further, the record reveals that IDEM accepted the amendments to the agreement between Gary and Mid–American required by the Gary Common Council. Also, IWS does not dispute the existence or form of the agreed judgment between Gary and IDEM. Finally, the record reveals the trial court was advised of the Common Council's approval of the agreement between Gary and Mid–American as early as June 29, 1990, by IWS's motion to intervene.

10. T.R. 24 provides in pertinent part:

(A) Intervention of Right. Upon timely motion, anyone shall be permitted to intervene in an action:

\* \* \* \* \* \*

(2) when the applicant claims an interest relating to a property, fund or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest in the property, fund or transaction, unless the applicant's interest is adequately represented by existing parties.

civil action on the alleged pollution, impairment, or destruction does not *diligently pursue* the administrative proceeding or civil action after the administrative proceeding or civil action is commenced.

(emphasis added).

IDEM argues that IWS cannot maintain an action under IC 13–6–1–1 because it failed to give notice and because IDEM was diligently pursuing the present civil action. In the trial court, IWS argued that IDEM's prior involvement in the case satisfies the notice requirement and that IDEM's action of tendering the agreed judgment, along with other action related to IDEM's decision to work toward a settlement with Gary, constitutes failing to diligently pursue the civil action. *See* Record II at 446–47.

■ What constitutes "diligently pursuing" under IC 13–6–1–1 is a question of first impression in Indiana. Apparently, IWS would assign a meaning to diligence that would require courts to consider the nature and substance of the agency's actions, and on that basis second guess the agency's motives in determining whether the agency was diligent in its pursuit of the case. IDEM, however, suggests we follow the federal courts' interpretation of a similar provision in the Resource Conservation and Recovery Act (RCRA) (located at 42 U.S.C. § 6972, et seq.) which applies the RCRA's language, "diligently prosecuting," in a manner that requires courts to merely consider whether the agency has been actively participating in the action. We find the federal court's interpretation of the similar provision in the RCRA persuasive.

The RCRA allows any person to commence a civil action against alleged violators of any permit, standard, regulation, condition, requirement, or order which has become effective under the RCRA, subject to the requirement that notice be given and to the limitation that an action may not be commenced where the federal government or a state has "commenced and is *diligently prosecuting* a civil or criminal action . . . to require compliance...." 42 U.S.C.

§ 6972(b). Whether the government is diligently prosecuting an action for purposes of 42 U.S.C. § 6872(b) has been addressed in *McGregor v. Industrial Excess Landfill, Inc.* (1987), N.D.Ohio, 709 F.Supp. 1401, *aff'd on other grounds,* (1988), 6th Cir., 856 F.2d 39, and *Dague v. City of Burlington* (1991), 2d Cir., 935 F.2d 1343, *rev'd in part, City of Burlington v. Dague* (1992), —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (reviewing only allocation of litigation costs issue).

In *McGregor,* individuals residing in the vicinity of a landfill filed class action law suits seeking relief under the citizen suit provisions of the RCRA. 709 F.Supp. at 1403. In deciding whether the court had jurisdiction over the complaints, the court considered whether the plaintiffs' actions were precluded because the Ohio Environmental Protection Agency (OEPA) was diligently prosecuting a civil action. *See id.* at 1407. The plaintiffs argued that the OEPA action had not effectively remedied all of the problems at the landfill and thus the OEPA was not diligently prosecuting its case. The court in *McGregor* held that such an allegation is not sufficient to override the RCRA's bar against citizen suits where the government has commenced a civil action. *Id.*

In *Dague,* the court considered whether a claim brought under the RCRA's citizen suit provision was barred because the government was diligently prosecuting a civil action. 935 F.2d at 1353. The court found that an agreement between the government and the City had been filed in a state court, which had entered the agreement as an order. *Id.* The federal appellate court in *Dague* held that, assuming the government's filing of the agreement constituted a commencement of an action for purposes of the RCRA's citizen suit provision, the only thing the government did after filing the agreement was bring an action to compel the defendant to perform an activity specified in the agreement, after the deadline for compliance had expired and after the defendant had been ordered to take the requisite action by the federal district court pursuant to the citizen suit. *Id.* In the

court's opinion, this level of involvement in the case rendered the government's diligence in prosecuting its case insufficient to bar the citizen suit. *Id.*

In both *McGregor* and *Dague*, the courts did not consider the substance of the government action, nor did the court in either case speculate or attempt to evaluate possible motives. Rather, the issue of whether the government was diligently prosecuting its case focused on the degree to which the government remained involved in the case after commencing the action. Furthermore, the court in *McGregor* rejected the suggestion that the government's action can be found to be not diligent because it does not resolve all problems presented at a specific site. Thus, mere dissatisfaction with the results of the government's action is not a basis for establishing that the government has not been diligent.

In the present case, IWS claims IDEM failed to diligently pursue its action against Gary because IDEM tendered a proposed agreed judgment that did not require the immediate cessation of disposal activities at the Dump and took other actions to which IWS assigns questionable or improper motives. Applying the federal courts' definition of "diligently prosecuting" under the RCRA, which we find instructive in defining "diligently pursuing" under IC 13–6–1–1, IWS's allegation of a failure to diligently pursue its claim addresses the substance and motives of the agency's actions rather than the level of agency involvement. Therefore, because IWS failed to establish IDEM's lack of diligence, it failed to provide a basis for claiming it was entitled to maintain an action under IC 13–6–1–1. Consequently, IWS failed to claim an interest recognized by law that relates to the subject of this action. Accordingly, the

trial court's action of allowing IWS to intervene as of right was clearly erroneous.[11]

 Finally, according to IWS, IDEM and Gary cannot be prejudiced by the trial court allowing IWS to intervene because the trial court has dismissed IWS's amended complaint without prejudice.[12] Accepting this statement as a stipulation, coupled with the fact that IWS does not appeal the dismissal, we are forced to agree that IWS is no longer a party to this action and, therefore, any error in allowing it to intervene is harmless.

## IV.

Gary argues the trial judge erred by not recusing himself and by denying Gary's motion for discovery on the issue of recusation. However, because we have determined that the trial court erred in refusing to approve the agreed judgment, the issue of whether the trial judge erred by not recusing himself, or by not allowing discovery on the issue of recusation, is moot.

## V.

 IWS argues the trial court erred by refusing to award IWS its litigation expenses incurred in responding to Gary's recusation motion. IWS relies upon the provisions of IC 34–1–32–1(b) (1988) which provide, in relevant part, that "[i]n any civil action, the court may award attorney's fees as part of the cost to the prevailing party." Any ambiguity in this subsection as to the identity of the "prevailing party" is resolved by subsection (a) of that same statute. It reads, in relevant part, "[i]n all civil actions, the party recovering judgment shall recover costs." IWS does not fall within the parameters of IC 34–1–32–1; a favorable ruling on a motion is not a judgment allowing the recovery of costs.

11. IWS argues the trial court's decision to allow IWS to intervene can be affirmed because IWS was entitled to permissive intervention. However, because the only questions of law or fact that IWS's complaint had in common with the questions of law and fact presented in the suit between IDEM and Gary involved IWS's claim under IC 13–6–1–1, there is no basis for IWS's argument in light of our discussion above.

12. Our reading of the February 15, 1991, judgment is that the trial court dismissed IWS's amended complaint without prejudice "with the exception of that portion related to Ind.Code Sec. 13–7–19–2." Record II at 1680. However, as IWS asserts that its entire amended complaint was dismissed without prejudice, we accept the assertion as a stipulation.

In conclusion, the 1988 Agreed Judgment constitutes the parties' (IDEM and Gary) previous effort to settle the case, and the trial court has no power to modify that agreement sua sponte. *See Hendrickson v. Hendrickson* (1988), Ind.App., 531 N.E.2d 544, 546; *Ingoglia v. The Fogelson Companies, Inc.* (1988), Ind.App., 530 N.E.2d 1190, 1198–1200. Therefore, the trial court's judgment of February 15, 1991, to the extent it modifies the 1988 Agreed Judgment, is erroneous and must be vacated. Furthermore, the trial court erred in adjudging Gary in contempt of court and erred in failing to approve the parties agreed judgment and order it entered of record. Finally, the trial court properly denied IWS litigation expenses it incurred in connection with the recusal proceedings as costs.

The contempt judgment is ordered vacated; the February 15, 1991, judgment of the trial court is affirmed in so far as it orders dismissal of IWS's intervening amended complaint and denies IWS certain litigation expenses it incurred in connection with the recusal proceedings as costs; in all other things, it is ordered reversed and the cause is remanded with instructions to the trial court to approve the agreed judgment and order it entered of record.

CONOVER and CHEZEM, JJ., concur.